PETERSON et al. v. MILLER RUBBER CO. OF NEW YORK.

Circuit Court of Appeals, Eighth Circuit.
January 25, 1928.

No. 7690.

1. Guaranty ⬅️34—Liability of guarantor is for debt of third person, and is secondary and collateral.

Liability of a guarantor is for debt of third person, is secondary and collateral, and its enforcement depends on compliance with certain conditions.

2. Principal and surety ⬅️65—Liability of surety is original, primary, and direct.

Liability of a surety is original, primary, and direct.

3. Principal and surety ⬅️6—"Surety" is party to principal obligation, undertaking, together with principal debtor, that it shall be performed, while "guarantor" is not party to principal obligation.

A "surety" is a party to principal obligation, undertaking, together with principal debtor, that it shall be performed, while "guarantor" is not party to principal obligation. In case of suretyship there is but one contract, binding surety and promisor; but in case of guaranty there are two contracts, one binding principal debtor, and one binding guarantor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Guarantor; Surety.]

4. Principal and surety ⬅️152—Creditor may sue surety and debtor jointly.

A creditor may bring an action jointly against surety and debtor.

5. Contracts ⬅️164—Several instruments, made at same time, relating to same subject-matter, may be read together as one contract, and recitals in one may be explained by reference to the other, even where parties are not same.

A contract may be contained in several instruments, and if they are made at the same time, and relate to same subject-matter they may be read together as one instrument, and recitals in one may be explained or limited by reference to the other; and this rule obtains, even where parties are not the same, if several

contracts were known to all parties and were delivered at same time to accomplish an agreed purpose.

**6. Principal and surety ⊜59—Where tire agency contract provided for execution of bond, and on same day bond was executed, and by its terms made original contract part thereof bond and contract, as regards sureties, became single joint undertaking.**

Where agency contract regarding sale of automobile tires, tubes and accessories, provided for execution and delivery of bond in sum of $10,000, and on same day bond was executed, and by its terms original contract was made "a part of this instrument," bond and original contract, so far as sureties were concerned, became single joint undertaking, though liability of principal was greater than $10,000.

**7. Principal and surety ⊜6—Bond guaranteeing payment for goods sold by automobile tire agent, making agency contract part thereof, was contract of suretyship, not guaranty.**

Bond in sum of $10,000, guaranteeing payment to obligee of all accounts for automobile tires, tubes, and accessories sold by agent, and redelivery of unsold goods on termination of contract, which bond made original contract a part of bond, where liability of agent was not limited to $10,000, *held* to be contract, not of guaranty, but of suretyship, since there was but one contract binding sureties and promissor.

**8. Principal and surety ⊜128(2)—Bond and agency contract made part thereof, construed together, gave obligee right to extend time to pay accounts guaranteed, or to fix liability if payment was not made within 60 days.**

Agency contract provision to effect that liability on bond should become fixed at option of first party as to each account guaranteed on failure to pay within 60 days, construed with provision of bond making original contract part thereof, that liability of surety should not become absolute as to any account for goods sold under contract, "unless said account, or any part thereof, shall remain unpaid for 60 days after maturity thereof, * * * and said surety consents to an extension" of time of payment, *held* to give obligee right to extend time for payment of accounts, or fix liability on bond if payments were not made within 60 days.

In Error to the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Action by the Miller Rubber Company of New York against E. G. Peterson and others. Judgment for plaintiff, and certain defendants bring error. Affirmed.

H. V. Mercer, of Minneapolis, Minn. (E. J. Lien and John G. Priebe, both of Minneapolis, Minn., on the brief), for plaintiffs in error.

Clark R. Fletcher, of Minneapolis, Minn. (E. P. Allen, of Minneapolis, Minn., on the brief), for defendant in error.

Before STONE, Circuit Judge, and REEVES and OTIS, District Judges.

REEVES, District Judge. Plaintiffs in error seek reversal of a judgment in the sum of $10,000 recovered against them as sureties or guarantors by defendant in error in the trial court. Plaintiffs in error and another were defendants below, and defendant in error was plaintiff, and the parties will be so designated in this opinion.

The style of the action was "Miller Rubber Company of New York, a Corporation, v. F. W. Abbott Company, a Corporation, and E. G. Peterson and F. W. Abbott, defendants." F. W. Abbott Company did not join in the application for writ of error, nor did it sue out such a writ on its own account. The judgment was "that the plaintiff, Miller Rubber Company of New York, a corporation, do have and recover of and from the defendant F. W. Abbott Company, a corporation, the sum of twelve thousand six hundred and twelve and 6/100 dollars ($12,612.06), and from the defendants E. G. Peterson and F. W. Abbott the sum of ten thousand and no/100 dollars ($10,000.00), in all the sum of twelve thousand six hundred and twelve and 6/100 dollars ($12,612.06), together with its costs and disbursements in this behalf expended."

The action proceeded against the individual defendants upon the theory of a suretyship for the corporate defendant. Plaintiff manufactured and sold automobile tires, tubes, and accessories, and F. W. Abbott Company had been employed as a sales agent. The petition alleged the execution of a written contract of employment between the assignor of the plaintiff and F. W. Abbott Company on the 1st day of November, 1918. This agreement was in its nature an agency contract, plaintiff company being the principal. Among other duties devolved upon the corporate defendant as agent, by the contract, was the following:

"It being understood and agreed that the party of the second part shall assume and pay all collection expenses and assume all losses for bad accounts and further said second party shall execute and deliver to said first party *a bond to the approval of first party in the sum of ten thousand dollars ($10,000.00), guaranteeing the payment to it of all accounts for goods sold by second party, the liability on said bond to become fixed at the option of the first party as to each account on failure to pay the same within sixty days after maturity and the surety on said bond shall waive all notice of default in payment of any account and shall consent to any extension of time of payment thereof, and said bond shall be further conditional to se-*

*cure the safe delivery and redelivery to first party of all stock so placed in the hands of second party as hereinafter provided."* (Italics are ours.)

On the same date, and pursuant to the requirements of said contract, the corporate defendant, with the individual defendants as sureties, executed and delivered to plaintiff their bond in the penal sum of $10,000. The following pertinent recitals are contained in said bond:

"Whereas, the said F. W. Abbott Company has entered into contract in writing with the Miller Rubber Company, *a copy of which said contract is hereto attached and made a part of this instrument,* by the terms of which said contract is it provided, among other things, that said the F. W. Abbott Company has assumed the responsibility for and has guaranteed the collection of all accounts for goods sold by it from the stock of the Miller Rubber Company, and payment to said the Miller Rubber Company of the selling price of such sales, and have further agreed to safely keep the said stock of the Miller Rubber Company placed in its care, and redeliver the unsold portion thereof to said company on the termination of said contract, and to protect the same from all loss and damage while in their custody:

"Now, therefore, if the said the F. W. Abbott Company shall well and faithfully account to said the Miller Rubber Company for the selling price of all sales by it made, pursuant to said contract, and shall collect and pay over to it the gross amount of said sales in the manner provided in said contract, and shall safely keep and care for the stock of said the Miller Rubber Company placed in its hands, and return the unsold portion thereof to it at the termination of said contract, free from damage, except such as may arise from deterioration by lapse of time, and shall do and perform all other things required by it under the terms of said contract, then this obligation shall be void; otherwise, the same shall remain in full force and effect. The Miller Rubber Company, however, reserves to itself the option of increasing the stock of casings and tubes above the amount set out in said contract, without notifying or in any [way] relieving said surety from his obligattion under this bond."

"It is agreed by and between the parties hereto that the liability of the surety on this bond shall not become absolute as to any account for goods sold by said the F. W. Abbott Company under said contract, unless said account or any part thereof shall remain unpaid for sixty days after the maturity thereof (the terms of sale to be thirty days net) and said surety consents to an extension or extensions of time of payment, or extensions of credit that may be given by said the F. W. Abbott Company or said the Miller Rubber Company to any customer of it, and waives notice of any default on the part of said the F. W. Abbott Company in collecting and accounting for the proceeds of any sales and waives all notice of non-payment of any and all customer's accounts at maturity; and said surety further consents to the handling of any or all transactions on the contract attached hereto on a trade acceptance basis."

The petition further alleged the execution of a supplemental agreement which was approved by the sureties and covered by their bond. It alleged the assignment of the contract to the plaintiff with the consent and approval of both principal and sureties. By the answer the sureties "admit that on or about the 1st day of November, 1918, the said defendants signed a guaranty to the said plaintiff for the F. W. Abbott Company, but allege that the said plaintiff never notified the said defendants that the said plaintiff accepted said guaranty."

The answer then alleged such matters as would relieve a guarantor of liability on a guaranty agreement. At the trial of the case it was stipulated between the parties that on the 1st day of November, 1920, the corporate defendant owed the plaintiff on accounts receivable the sum of $8,171.36 and that such accounts were more than 60 days past due. It was also admitted "that on the general account, existing between the parties, there was on November 1, 1920, due $4,447.11." It is not necessary to mention other parts of the testimony, for the reason that, if liability accrues against the individual defendants, it cannot be in excess of the penalty of the bond, which is $10,000. The items mentioned aggregate more than $10,000.

[1, 2] 1. The main question for consideration is whether the so-called bond was a contract of suretyship, or one of simple guaranty. As a postulate to the consideration, the following should be noted:

"The liability of a guarantor is for the debt or obligation of a third person, is secondary and collateral, and its enforcement depends upon compliance with certain conditions. The liability of a surety is original, primary, and direct." Transcontinental Petroleum Co. v. Interocean Oil Co. (C. C. A.) 262 F. 278, loc. cit. 283.

[3, 4] While the distinction between the con-

tract of guaranty and the contract of suretyship is not always clear, yet the vital difference between the contract of a surety and that of a guarantor is that a surety is charged as an original promisor, while the engagement of the guarantor is a collateral undertaking. A surety is a party to the principal obligation, undertaking together with the principal debtor that it shall be performed; while the guarantor is not a party to the principal obligation. In case of suretyship there is but one contract, binding the surety and the promisor, but in the case of a guaranty there are two contracts, one binding the principal debtor, and one binding the guarantor. A creditor may bring an action jointly against a surety and the debtor. 12 R. C. L. § 6, p. 1057.

[5] A contract may be contained in several instruments. These if made at the same time, in relation to the same subject-matter, may be read together as one instrument, and the recitals in one may be explained or limited by reference to the other. This rule obtains even when the parties are not the same, if the several contracts were known to all the parties and were delivered at the same time to accomplish an agreed purpose. MacDonald v. Wolff, 40 Mo. App. 302; Houck v. Frisbee, 66 Mo. App. 16; Western Advertising Co. v. Publishing Co., 146 Mo. App. 90, 123 S. W. 969; 13 C. J. 529.

[6] Applying the foregoing principles to the facts, it will be noted that the original contract with the corporate defendant provided for the execution and delivery of a bond in the sum of $10,000, guaranteeing the same matters which form the basis of this suit. On the same day the bond was executed, and by its terms made the original contract "a part of this instrument." The bond and the original contract, so far as the individual defendants are concerned, became a single joint undertaking. Penalty of the bond, however, was limited to $10,000, even though the liability of the corporate defendant was greater than that.

The supplemental agreement, referred to in the petition, effective on the 15th day of May, 1919, and declared to be "supplemental to and becomes a part of a certain contract entered into November 1, 1918," undertook to extend the operations of the agency carried on by the corporate defendant and was signed by each of the individual defendants with the following recitals:

"It is further understood and agreed by and between the parties hereto and E. G. Peterson, as surety *on the bond to which said* *contract is attached and made a part thereof,* *that the aforementioned addition is made with* *the full knowledge and consent of the said* *surety and* that said surety shall be and is liable for all transactions under this supplement, the same as though the said Great Falls, Mont., branch arrangement was a part of the original contract of November 1, 1918."

When the contract was assigned on the 30th day of December, 1919, the individual defendants agreed to the following:

"And E. G. Peterson and F. W. Abbott, as sureties, do hereby consent to said assignment and agree with the Miller Rubber Company of New York to do any and all things which were to be done *by us under said contract and bond."*

[7] The obligation of the individual defendants was original, primary, and direct, and the whole obligation was joint and several. There was but one contract, binding the surety and promisor. The only difference was that the sureties limited their liability to the penal sum of $10,000. Treating the obligation of the defendants as that of suretyship, it is unnecessary to notice the suggestions on the subject of guaranty.

[8] 2. It is argued by the defendants that liability as to the accounts receivable was not fixed, because of the provision in the contract to the effect that "the liability on said bond to become fixed at the option of the first party as to each account on failure to pay the same within 60 days after maturity." The bond provided for in the original contract, and which was executed contemporaneously and became a part thereof, contained the following provisions:

"It is agreed by and between the parties hereto that the liability of the surety on this bond shall not become absolute as to any account for goods sold by said F. W. Abbott Company under said contract, unless said account or any part thereof shall remain unpaid for 60 days after the maturity thereof * * * and said surety consents to an extension, or extensions of time of payment."

Considering these two provisions, it was apparently the purpose of the parties to permit the creditor to grant indulgences on the accounts. It was the right of the creditor, under the contract, to extend the time for the payment of the accounts if same might seem desirable, or it was his right to fix liability if payment was not made within the 60 days. This is what the parties meant by the use of the word "option."

The judgment of the trial court will be affirmed.