## COMMISSIONER OF INTERNAL REVENUE v. NEWBOLD'S ESTATE et al.

### No. 32, Docket 20252.

Circuit Court of Appeals, Second Circuit.

Dec. 6, 1946.

Douglas W. McGregor, Asst. Atty. Gen., and Sewall Key, Helen R. Carloss and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., for petitioner.

Earle W. Carr, of Boston, Mass. (Gaston, Snow, Rice & Boyd, of Boston, Mass., of counsel), for respondents.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The taxpayers are the executors under the will of Thomas Jefferson Newbold, who died on July 5, 1939, a resident of the state of New York. On December 30, 1924 the decedent created a trust of which he named himself and another the trustees. The question presented by the present proceeding is whether the full value, at the time of his death, of the corpus of this trust is required to be included in the settlor's gross estate under section 811(d) (2) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev. Code, § 811(d) (2), because of the power of the trustees to terminate the trust and distribute the corpus to the income beneficiaries. The Tax Court ruled, following its own prior decision in Estate of Holmes v. Commissioner, 3 T.C. 571, that the power to terminate the trust and thus accelerate the time of enjoyment of the beneficiaries was not a power to "alter, amend or revoke" within the statutory language.[1] But the ruling of the Tax Court in the Holmes case was subsequently reversed. Commissioner v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257. The Commissioner contends that that decision controls the case at bar.

The taxpayers seek to distinguish the Holmes case because there the power of termination was exercisable by the set-

---

[1] Section 811 (d) (2) requires that property transferred before June 22, 1936 shall be included in the gross estate—

"To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend. or revoke * * *"

tlor in his individual capacity, while here the power has been reserved to the settlor in his capacity as trustee.[2] The Supreme Court found it unnecessary to determine whether that distinction would produce a different result, 326 U.S. at page 490, 66 S.Ct. at page 262. But such cases as have considered the question hold that it is immaterial in what capacity the settlor exercises the power, and we agree. Welch v. Terhune, 1 Cir., 126 F.2d 695, certiorari denied 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519; Union Trust Co. v. Driscoll, 3 Cir., 138 F.2d 152, certiorari denied 321 U.S. 764, 64 S.Ct. 521, 88 L.Ed. 1061; Nettleton v. Commissioner, 4 T.C. 987; see also Treas.Reg. 105, sec. 81.20. These decisions show that the words "(in whatever capacity exercisable)" added to section 811(d) (1) of the statute were declaratory of existing law and do not evidence a congressional intent to limit the meaning of the word "power" which appears without the added words in § 811(d) (2).

The taxpayers further argue that under the Newbold trust, unlike the trust in the Holmes case, the trustees had no power to accumulate income; therefore the life interests of the beneficiaries were vested in present enjoyment, and only the beneficial enjoyment of the remainder interests was subject to change by an exercise of the trustees' power to terminate the trust. These contentions involve interpretation of the trust indenture the relevant portions of which are set out in the margin.[3]

[2] Paragraph X of the trust indenture provided that the trustees "may on their own motion and in the exercise of their discretion at any time terminate this trust and divide the entire Trust Estate in the manner prescribed in paragraph VIII of this instrument, but before such termination shall be valid, the Trustees shall give six months' written notice in advance thereof to each beneficiary then alive."

[3] "IV. After deducting the expenses of administering the trust, specified in paragraph III, the Trustees shall pay over the income, in equal shares, to the children of the said T. Jefferson Newbold, on the death of any such child, then to his or her issue per stirpes. V. The Trustees shall, at least once a year, but as much more often as they in the exercise of their uncontrolled and untrammeled discretion and judgment deem necessary, desirable, advisable or convenient for the proper performance of their trust, divide the income of the Trust Estate into that number of equal parts which shall equal the sum of (A) the number of the children of the Settlor then alive, plus (B) the number of the children of the Settlor who are then dead but who have left issue him, her or them surviving, plus (C) the number of the children of the Settlor who are then dead leaving no issue but have each left a husband or wife her or him surviving, not again married and then alive, then the said Trustees shall assign one of such aforesaid equal parts provisionally and subject to the conditions hereinafter set forth, to (A) each of the children of the Settlor then alive, (B) to all the issue of each deceased child of the Settlor who shall have died leaving issue him or her surviving, and (C) to any living husband or wife, then not again married, of any deceased child of the Settlor who shall have died leaving no issue but leaving a husband or wife her or him surviving, and the said Trustees shall thereupon as soon as they conveniently may do so, apply such said equal part, assigned as aforesaid, to the support, maintenance, education or comfort of each of the persons or classes enumerated in this paragraph, and the said Trustees shall apply such equal part for the foregoing purposes, either (a) by direct payment to the person or class entitled thereto or (b) by such payments for the benefit of such aforesaid persons or classes as the said Trustees may determine and decide to be for the best interest and permanent benefit of such aforesaid persons and classes, and none of the aforesaid persons or classes, beneficiaries of the Trust Estate shall have any just claim or rights, either at Law or in Equity to force or compel the said Trustees to pay any sum or sums of money in any manner or to any person or persons or to do any other thing, if the said Trustees in the exercise of their judgment and discretion as aforesaid decide against the payment of such money or the doing of such thing. VI. No person or class enumerated in this instrument as a beneficiary shall have any absolute or vested right to receive from income any payments either directly or for his benefit and no beneficiary shall assign any interest from income to any person, firm or corporation. If any beneficiary attempts to assign, or if any creditor of any beneficiary attempts to reach by legal process any such interest of such beneficiary then as far as I may legally do so, I or-

When the Newbold trust was set up in 1924 the settlor had five children, of which the oldest was ten years of age and the youngest not quite six months. The trust was to continue, unless otherwise terminated, until the youngest living child should

der and direct that the Trustees apply such interest directly to the support of the said beneficiary or his family, or in their absolute, uncontrolled and untrammeled discretion, the Trustees may add such interest to the principal of the Trust Estate. VII. And I the Settlor, hereby suggest and recommend to, but expressly do not order, require or command, the Trustees that each of the persons or classes enumerated as beneficiaries in the foregoing paragraph of this instrument should have allocated to him or them for the purposes for which this Trust is created, a sum equal to at least Twenty-four Hundred Dollars per year, if the income of such said Trust Estate shall permit, and I further merely suggest and recommend that such said sum should, if it can conveniently be done be paid to or for the benefit of each beneficiary in equal monthly instalments. Furthermore, I should like to have the Trustees confer at least three times a year with the beneficiaries who have reached maturity so that said beneficiaries may learn as much as possible about the management of their affairs and what securities will be coming to them in the future. VIII. The said Trust shall, subject to the provisions in paragraphs IX and X of this instrument, be of full force and effect and shall continue until the youngest living child of the Settlor shall have attained the age of thirty years and then the Trust shall terminate and the principal of the Trust Estate shall be distributed in the following manner: the Trustees after deducting all reasonable and proper expenses shall divide the said principal into that number of equal parts which shall equal the sum of (A) the number of the children of the Settlor then alive plus (B) the number of the children of the Settlor who are then dead but who have left issue him or her or them surviving, plus (C) the number of the children of the Settlor who are then dead leaving no issue but have each left a husband or wife her or him surviving, not again married and then alive, when such division shall have been made, the Trustees shall as soon as they conveniently can distribute the said estate and principal by giving absolutely and in fee simple one of each of such said equal parts to each of the children of the Settlor then alive and by dividing absolutely and in fee simple one of such said equal parts among the issue of each of the children of the Settlor then alive [sic] and by dividing absolutely and in fee simple one of such said equal parts among the issue of each of the children of the Settlor who is then dead leaving issue him or her surviving, each of said issue to share the part in which he or she has an interest by right of representation, the balance of the said principal of the Trust Estate the said Trustees shall transfer, grant, assign, set over and deliver unto themselves to hold as Trustees in a new and separate Trust Estate under all the rights, powers, privileges and duties which they enjoy and to which they are subject under this instrument except as the same are modified or altered in this paragraph, such new Trust Estate shall be divided into as many equal parts as there shall be surviving and not again married husbands or wives of any deceased child or children of the Settlor, to each of such surviving husbands or wives the Trustees shall, during the lifetime of such surviving husband or wife and only while he or she remains unmarried, pay the income of one of such aforesaid equal parts but upon the death or remarriage of any such surviving husband or wife, such person shall have no further interest in the Trust Estate, and the Trustees shall forthwith distribute among the heirs-at-law, as determined by the laws of the Commonwealth of Massachusetts, of the child of this Settlor who was the deceased husband or wife of such said person the aforesaid equal part. IX. There shall be no division of the capital or principal of the Trust Estate, except as the same may take place under paragraph X of this instrument, until the oldest living child of the Settlor shall have attained the age of twenty-one years. Upon attaining the age of twenty-one years, or at any time thereafter, any child of the said Settlor may in writing request the Trustees to give to him or her absolutely and in fee simple any part, up to but not beyond fifty per cent of its total value, of the interest in the capital of the Trust Estate which such child would have if the said Trust Estate were terminated in the manner prescribed in paragraph VIII of this instrument. If, in the uncontrolled and untrammeled discretion of the Trustees, such distribution would be for the best interests and welfare of the said child, the Trustees may accede to such request and give to such child such sum, they

have attained the age of thirty. The trustees were directed to pay the net income to the children, in equal shares, and on the death of any child to his or her issue per stirpes.[4] At least once a year the trustees were to divide the trust income into equal parts and "provisionally" to assign one of such parts to each living child, one to the issue of each deceased child, and one to the surviving spouse, who was not remarried, of a deceased child who left no issue. But no beneficiary was to have any vested right to receive income either directly or by application for his benefit except in the trustees' discretion.[5] Upon the termination of the trust the trustees were to divide the principal into so many equal parts as shall provide (1) one part for each child of the testator then alive, (2) one part for each deceased child who has left surviving issue, and (3) one part for each child dying without issue who has left a spouse still living and not again married. The parts assigned for those in class (1) were to be delivered to them; the parts assigned to those in class (2) were to be distributed in equal shares by representation; and the parts in class (3) were to be retained by the trustees in trust to pay the income thereof to the deceased child's spouse so long as he or she remained unmarried, and upon the death or remarriage of such spouse the principal was to go to the deceased child's heirs.[6]

The taxpayers argue that accumulation of income is authorized only on the express condition of the spendthrift clause set out in paragraph VI of the indenture, and consequently no general power to accumulate, for which the Commissioner contends, can be implied from the discretionary power to withhold payment of income conferred by the concluding clause of paragraph V, and the clause must be construed to mean that the trustees have discretionary power merely to postpone payment of income but must ultimately pay it to the particular beneficiary to whom it was allotted. We think that such interpretation overlooks that the allotment is only "provisional." Even if the income of which payment was withheld does not become principal by accumulation but remains income, it is income belonging to the trust estate and not to the particular beneficiary to whom it was only "provisionally" allotted; and in the next annual provisional allotment such withheld income, like any other income of the estate, would be divided among all the beneficiaries. Hence if the particular beneficiary from whom it had been withheld had in the meantime died, he would never receive any of it; or, if the trustees should terminate the trust, he would, if living, receive only one-fifth of it. If anything is clear from this rather obscurely drawn trust indenture, it is that "No person * * * as a beneficiary shall have any absolute or vested right to receive from income any payments either directly or for his benefit * * *" (paragraph VI). Thus the exercise of the power to terminate would, depending on the time when it was exercised, determine the beneficiaries among whom the income would be divided; and similarly as to the corpus of the trust estate. We think the case falls squarely within Commissioner v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257.

The Commissioner concedes that since termination of the trust under the power required six months' notice, adjustment in value of the property is required under section 811(d) (3). Accordingly the case must be remanded for such adjustment.

Decision reversed and cause remanded.

amount of said share to be determined as set forth in paragraph VIII, but in any event the decision of the Trustees upon such request shall be final and not subject to review. * * * XII * * * Should all the beneficiaries of this Trust unanimously and in writing at any time request that any person nominated by them should be one of the Trustees, then such person shall forthwith become a Trustee hereunder, but with the proviso that the number of Trustees shall never at any time be more than three. * * *"

[4] See paragraph IV, note 3, supra.

[5] See paragraphs V and VI, note 3, supra.

[6] See paragraph VIII, note 3, supra.