## JENNINGS et al. v. SMITH.
### No. 116, Docket 20270.

Circuit Court of Appeals, Second Circuit.
April 14, 1947.

Burton Roberts, in pro. per.

John R. Dethmers and Perry A. Maynard, both of Lansing, Mich., for appellee.

Before MARTIN, McALLISTER, and MILLER, Circuit Judges.

Marsh, Day & Calhoun, of Bridgeport, Conn. (Satterlee, Green & Sher, of New York City, of counsel), for appellants.

Sewall Key, Acting Asst. Atty. Gen., Helen R. Carloss, Robert N. Anderson and Lester L. Gibson, Sp. Assts. to Atty. Gen. and Adrian W. Maher, U. S. Atty., of Hartford, Conn., for appellee.

Before SWAN, CHASE and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an action by the executors of the will of Oliver Gould Jennings, a resident of Connecticut whose death occurred on October 13, 1936, to recover such part of the estate tax paid by them to the defendant collector as had been illegally collected. Their right to a refund of the amount claimed is clear under Maass v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940, 132 A.L.R. 1035, and was not disputed; but the defendant set up in defense an ad-ditional estate tax liability (greater than the alleged overpayment) based on the failure to include in the decedent's gross estate the value of certain property which he had transferred in trust in 1934 and 1935. Although assessment of an additional estate tax was barred by the statute of limitations, the plaintiffs do not contend that they are entitled to a refund unless the tax legally due was overpaid. See Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293. Hence the question presented at the trial, and renewed here, is whether the value of the trust property should have been included in the gross estate. The district court held it includible under § 811(d) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(d). Accordingly judgment was given for the defendant, and the plaintiffs have appealed.

In December 1934 the decedent set up two trusts: one for the family of his elder son, B. Brewster Jennings, the other for the family of his younger son, Lawrence K. Jennings. The trust instruments were identical, except for the names of the beneficiaries and the property transferred.[1] In discussing the terms of the trusts it will suffice to refer to the one set up for the elder son's family. The trust was irrevocable and in so far as legally permissible its provisions were to be interpreted and enforced according to Connecticut law. It reserved no beneficial interest to the settlor. He and his two sons were named as the trustees; in case a vacancy should occur provision was made for the appointment of a successor trustee having like powers; there were always to be three trustees and they were authorized to act by majority vote. At the end of each year during the life of the son, the trustees were to accumulate the net income by adding it to the capital of the trust but they were given power, "in their absolute discretion" at any time during the year and prior to the amalgamation of that year's net income into capital, to use all or any part of it for the benefit of the son or his issue provided "the trustees shall determine that such disbursement is reasonably necessary to enable the beneficiary in question to maintain

---

[1] The trust property of each trust was augmented by a further transfer in December 1935.

himself and his family, if any, in comfort and in accordance with the station in life to which he belongs."[2] Upon the death of the son the capital of the trust was to be divided into separate equal trust funds, one for each of his surviving children and one for each deceased child who left issue surviving at the death of the son. The trustees also had power to invade the capital upon the terms set out in paragraph 3(f) of the trust deed.[3] In the Lawrence K. Jennings trust all current net income for the years 1935 and 1936 was paid to him, the trustees, of whom the decedent was one, having unanimously determined that such payments were necessary to enable Lawrence to maintain himself and his family in comfort and in accordance with his station in life. No payment or application of income of the B. Brewster Jennings trust, and none of capital of either trust, was made or requested during the life of the decedent.

Gift tax returns covering the transfers in trust were duly filed and taxes paid thereon. The trusts were not created in contemplation of death, nor to reduce estate taxes on the settlor's estate.

---

[2] The relevant section of the trust deed reads as follows: "2. The trustees shall receive and collect any increments to the capital and also the income arising from said trust fund, and after paying or providing for current and anticipated taxes, charges and expenses of execution of this trust, including reasonable compensation for financial advice and legal and clerical services, shall dispose of the net income during the life of said B. Brewster Jennings as follows: At the end of each calendar year during the life of said B. Brewster Jennings, commencing with the year 1935, they shall accumulate said net income by adding and incorporating the same into the capital of said trust fund and thereafter administering the same as an integral part of said capital, Provided, However, that the trustees shall have power, in their absolute discretion, at any time or times during any year in his lifetime prior to the amalgamation of that year's net income into capital, to utilize any or all of said current net income by either. (a) paying over the same to said B. Brewster Jennings and/or to any one or more of his issue and/or to the guardian of any minor issue, in such amounts as said trustees may deem advisable, or (b) applying the same for the benefit, support and maintenance of B. Brewster Jennings and/or the benefit, support, maintenance or education of any one or more of his issue, in either case, (a) or (b), at such times and in such manner and in such proportions among such of said beneficiaries, if any, as the trustees may deem advisable, or (c) by both such payments and such applications of income, and Provided, Further, that the trustees, in the case of each payment or application of income, shall determine that such disbursement is reasonably necessary to enable the beneficiary in question to maintain himself and his family, if any, in comfort and in accordance with the station in life to which he belongs. In making such determination the trustees shall take into consideration the amount of income which the beneficiary may enjoy from sources other than this fund, but the decision of the trustees shall be final and conclusive. At the end of each calendar year, the trustees shall add to the capital, as above provided, all of said net income which has been withheld by them and which accordingly has not during that year been paid over to, or applied for, any of said beneficiaries. The trustees may also resort to the capital for use and application as hereinafter provided in Paragraph 3(f)."

[3] "(f) In the course of administration of said general trust fund and of said separate trust funds, that is to say, either before or after the death of said B. Brewster Jennings, if said B. Brewster Jennings or any one or more of his issue should suffer prolonged illness or be overtaken by financial misfortune which the trustees deem extraordinary, they may resort, as the case may be, to the capital of said general fund or to the separate fund held for the benefit of the branch of the family to which such person or persons belongs, and may apply any part of the same for his benefit and that of his wife and/or children, and they may also pay over part of said capital to him, to the extent in either event they deem reasonably necessary in their discretion to meet such conditions. In so doing they shall, as above provided, consider other income of said beneficiary.

"Their powers in this respect shall include the provision of a place of residence for any such person either by way of rental of suitable premises or by acquisition of land and the construction of suitable buildings or the alteration and reconstruction of buildings already thereon."

Section 811(d) (2) of the Code, which is applicable to transfers made before June 22, 1936, provides for inclusion in the gross estate of all property "To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, * * *".

The appellants contend that this section embraces only powers exercisable by the settlor in his individual capacity and does not include powers exercisable by him in a fiduciary capacity, either alone or as one of several trustees. Under § 811(d) (1), which relates to transfers made after June 22, 1936, the existence of a power to alter, amend or revoke "(in whatever capacity exercisable)" is sufficient. Whether the quoted parenthetical phrase was intended to effect a change or was declaratory of existing law was left open in Commissioner v. Estate of Holmes, 326 U.S. 480, at page 490, 66 S.Ct. 257. But in Commissioner v. Newbold's Estate, 2 Cir., 158 F.2d 694, this court recently held, following the first and third circuits, that the phrase was merely declaratory and its absence from § 811(d) (2) is consequently not significant. Despite the appellants' able argument to the contrary, we adhere to that view.

The next question is whether the powers conferred upon the trustees in the case at bar are powers of the character described in section 811(d) (2), which requires that enjoyment of the trust property must be subject at the date of the decedent's death to change through the exercise of a power. The trustees' power to invade the capital of the trust property was exercisable only if the son or his issue "should suffer prolonged illness or be overtaken by financial misfortune which the trustees deem extraordinary." Neither of these contingencies had occurred before the decedent's death; hence enjoyment of the capital was not "subject at the date of his death to any change through the exercise of a power." In Commissioner v. Flanders, 2 Cir., 111 F.2d 117, although decision was rested on another ground, this court expressed the opinion that a power conditioned upon an event which had not occurred before the settlor's death was not within the section. In support of this view we cited Tait v. Safe Deposit & Trust Co., 4 Cir., 74 F.2d 851, 858; Day v. Commissioner, 3 Cir., 92 F.2d 179; Patterson v. Commissioner, 36 B.T.A. 407. The question has recently been explored by the Tax Court in Estate of Budlong v. Commissioner, 7 T.C. 758. There it was held in a convincing opinion that the power of trustees to invade corpus in case of "sickness or other emergency," which had not occurred before the decedent's death, was not a power to "alter, amend or revoke" within the meaning of the statute. The court reasoned that the trustees had not unlimited discretion to act or withhold action under the power, since the trust instrument provided an external standard which a court of equity would apply to compel compliance by the trustees on the happening of the specified contingency or to restrain threatened action if the condition were not fulfilled. In the case at bar the district judge was of opinion that even if the trustees found that the stated conditions had been fulfilled, "their finding created no enforcible rights in any of the beneficiaries." 63 F.Supp. 834, at page 837. In this view we are unable to concur.[4] The condition upon which the power to invade capital might arise is sufficiently definite to be capable of determination by a court of equity. As Judge L. Hand said in Stix v. Commissioner, 2 Cir., 152 F.2d 562, 563, "no language, however strong, will entirely remove any power held in trust from the reach of a court of equity." See also Cushman v. Commissioner, 2 Cir., 153 F.2d 510, 514; Commissioner v. Irving Trust Co., 2 Cir., 147 F.2d 946, 949; Greenwich Trust Co. v. Converse, 100 Conn. 15, 26, 122 A. 916; Hooker v. Goodwin, 91 Conn. 463, 99 A. 1059, Ann.Cas. 1918D, 1159; Little v. Geer, 69 Conn. 411, 37 A. 1056. Since the trustees were not free to exercise untrammeled discretion but were to be governed by determinable standards, their

---

[4] Judge Arundell also expressed disagreement with it in the Budlong opinion.

power to invade capital, conditioned on contingencies which had not happened, did not in our opinion bring the trust property within the reach of section 811(d) (2).

■ Similar reasoning leads to the same conclusion with respect to the trustees' power over net income. At the end of each calander year they were to accumulate the net income of that year unless prior to its amalgamation into capital they exercised their power to disburse it to, or for the benefit of, the son or his issue. The power the trustees had with respect to disbursing income was exercisable year by year; and at the date of the decedent's death the only income of which the enjoyment was subject to change through exercise of a power was the income of the B. Brewster Jennings trust for the year 1936. But the exercise of this power was conditioned on the trustees' determination that disbursement of the income was necessary to enable the beneficiary to whom it might be allotted to maintain himself and his family "in comfort and in accordance with the station in life to which he belongs." The contingency which would justify exercise of the power had not happened before the decedent's death; consequently the 1936 net income of the B. Brewster Jennings trust was not subject at the date of the decedent's death "to any change through the exercise of a power." Hence it was not includible in the gross estate of the decedent under § 811(d). This conclusion is not inconsistent with Commissioner v. Newbold's Estate, 2 Cir., 158 F.2d 694, for there the trustees had unlimited discretion, the trust instrument expressly providing that no beneficiary should have any vested right to receive any payment from income.

■ There remains for consideration the question whether the value of the trust property is includible in the decedent's estate under § 811(c) upon which the appellee also relies. This section, derived from § 302(c) of the Revenue Act of 1926 as amended by the Joint Resolution of March 3, 1931 and § 803 of the Revenue Act of 1932, provides for inclusion within the gross estate of all property "To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; * * * *".

Section 302(c) of the Revenue Act of 1926 was supposed to reach transfers made in contemplation of death or intended to take effect in possession or enjoyment at or after the settlor's death. The amendments, as the legislative history discloses, were intended to avoid the effect of the decision in May v. Heiner, 281 U.S. 238, 50 S. Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, where the settlor reserved a life estate, and to reach transfers closely akin to testamentary dispositions. See Report No. 708, 32d Cong., 1st Sess. at page 46; Beach v. Busey, 6 Cir., 156 F.2d 496, 497. The possession or enjoyment referred to in clause (1) is plainly that of the settlor. The "right," referred to in clause (2), to designate the persons who shall possess or enjoy the property or the income therefrom, is not so limited and apparently overlaps the powers mentioned in § 302(d), as amended, § 811(d) of the Code. See Art. 19, Treas. Reg. 80. At first glance it might seem that clause (2) covers the present case, because the decedent, for a period that did not in fact end before his death, "retained the right," in conjunction with another of the trustees, to designate the persons who should enjoy the trust property or the income therefrom. But for the reasons that moved us when considering the applicability of § 811(d) we think the decedent effectively put that "right" beyond his own control or retention by imposing conditions upon the exercise of it. A "right" so qualified that it becomes a duty enforcible in a court of equity on petition by the beneficiaries does not circumvent the obvious pur-

pose of § 811(c) to prevent transfers akin to testamentary dispositions from escaping taxation. In this respect the case at bar differs from the trust involved in Budlong's Estate, 7 T.C. 758, where the court held that § 811(c) was applicable to the unlimited power of the decedent, as sole trustee, to distribute the trust income or to accumulate and add it to the principal. In the Jennings trusts the rights of the beneficiaries were no more affected by the settlor's death in October 1936 than they would have been had he resigned as a trustee in January 1936. In either event the contingent power of the trustees to invade corpus or to disburse the net income of 1936 or any subsequent year would remain the same as before his death or resignation. Only when the interest of some beneficiary is enlarged or matured by the decedent's death, is § 811(c) applicable, in our opinion. In the case at bar the decedent's death had no such effect.

The judgment is reversed and the cause remanded with directions to enter judgment for the plaintiffs.