Charles KURZ, Ruth G. Joseph and Thorkil Aschehoug, as Executors under the Last Will and Testament of Theodore H. Joseph, deceased, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

United States District Court
S. D. New York.

Oct. 25, 1957.

Bondy & Schloss, New York City, Eugene L. Bondy and Bertram Braufman, New York City, of counsel, for plaintiffs.

Paul W. Williams, U. S. Atty., for the Southern Dist. of N. Y., New York City, Gerard L. Goettel, Asst. U. S. Atty., New York City, of counsel.

PALMIERI, District Judge.

This is an action to recover estate taxes which are alleged to have been illegally assessed against the plaintiffs, as Executors under the Last Will and Testament of Theodore H. Joseph.[1] Both sides move for summary judgment.[2]

The assessment of the estate taxes sought to be recovered was based on the

---

1. 28 U.S.C. § 1346(a) (1).

2. Fed.Rules Civ.Proc., rule 56, 28 U.S.C.

determination of the Director .of Internal Revenue that the principal of an *inter vivos* trust, valued at the time of decedent's death at $353,846.22, was includible, for estate tax purposes, in the decedent's gross estate. This determination was based upon Section 811(d) of the Internal Revenue Code of 1939, 26 U.S.C. § 811(d), the trust being deemed a transfer which was subject to a power in the transferor to alter, amend or revoke, either alone or in conjunction with another. Plaintiffs concede the existence of a reservation of such power in paragraph eighteenth of the trust instrument, which was executed on December 4, 1931. However, they contend that the words which reserved such power were nugatory and ineffective, since prior rights had been created in the trust corpus, and these rights, they maintain, were beyond the decedent's power to divest.

The essential facts are not in dispute.

### The Separation Agreement

On October 16, 1931, the decedent and his wife, Sylvia F. Joseph, entered into a marital separation agreement which provided, among other things, that the decedent create a trust, the payments under which were to be in full discharge of any liability on the part of the decedent for the support of his wife. The couple agreed that the corpus of the trust would consist of certain securities which were listed on an annexed schedule, that the trustee would be United States Trust Company of New York, and that the trust would contain the following dispositive provisions:

(a) The trustee was to pay the entire income to the wife during her lifetime.

(b) Upon the death of the wife, the principal was to be divided into three separate funds in stipulated proportions, a fund to be held during the life of each of the decedent's three daughters.

(c) The income from the fund held for any daughter living at the death of the wife was to be paid as follows: two-thirds thereof to the said daughter and one-third thereof to the grantor.[3]

(d) If any daughter predeceased the wife, the fund that would have been held for such daughter was to be distributed absolutely upon the wife's death as follows: two-thirds thereof to the lawful issue of such deceased daughter and one-third thereof to the grantor;[4] however, in the event that such deceased daughter had left no lawful issue living at the date to the wife's death, then the fund that would have been held for such daughter was to be added in equal parts to the funds held for the remaining daughters. •

(e) Upon the death of each daughter that survived the wife, one-third of the principal of the trust held during the life of that daughter was to be paid to the decedent,[5] and two-thirds thereof was to be paid to the daughter's lawful issue, or if there were none, then to the deceased daughter's sisters and their lawful issue, per stirpes.

There followed a provision which would have been operative if the wife survived the husband. Since she predeceased him, however, by about fourteen years, no reference need be made to it.

In addition, the separation agreement in paragraph nine thereof, provided as follows:

"The trust agreement under which the foregoing trust specified in Paragraph 1 shall be established, shall be in such form as may be agreed upon between counsel representing the respective parties."

Nowhere in the separation agreement is there any indication of the parties' intention that the contemplated trust be either revocable or irrevocable.

### The Trust Instrument

Subsequently, on December 4, 1931, in an agreement between the decedent, as settlor, and United States Trust Company of New York, as trustee, the dece-

---

**3.** The decedent subsequently relinquished this interest.

**4.** See note 3, supra.

**5.** See note 3, supra.

dent established the trust which he had promised to create in paragraph one of the separation agreement. The trust agreement substantially restated the dispositive provisions of the separation agreement. It contained, in addition, many paragraphs pertaining to matters which had not been mentioned in the separation agreement. Among these was paragraph eighteenth, in which the decedent-settlor reserved a right of revocation. Since the reservation of this power is the factor upon which the Government relies in placing the trust in a taxable category, the validity and significance of paragraph eighteenth is the crucial issue here. The paragraph provided as follows:

"This agreement may be revoked and/or modified at any time during the life of the Settlor and the Beneficiary by a written instrument in due form of law executed and acknowledged by the Settlor and the Beneficiary, and in addition thereto by Isaac H. Levy, Esq.; and if at the time said instrument is so executed by the Settlor and the Beneficiary said Isaac H. Levy shall be dead, or judicially declared to be an incompetent person, or in the opinion of the Trustee, whose judgment shall be deemed final, not reasonably accessible, then by George Gordon Battle, Esq.; and if at the time said instrument is so executed by the Settlor and the Beneficiary said George Gordon Battle shall be dead, or judicially declared to be an incompetent person, or in the opinion of the Trustee, whose judgment shall be deemed final, not reasonably accessible, then by Michael H. Cardozo, Jr. All of the said Messrs. Isaac H. Levy, George Gordon Battle, and Michael H. Cardozo, Jr. are attorneys at law. The instrument revoking and/or modifying the trust agreement is to be filed with the Trustee, and thereupon will become effective to accomplish the purposes therein set forth.

"After the death of the Beneficiary, and during the life of the Settlor if he survives her, this agreement may be revoked and/or modified by a written instrument in due form of law executed and acknowledged by the Settlor and those two of the Daughters then living who shall be the elder, and in addition thereto by said Isaac H. Levy; and if at the time said instrument is so executed by the Settlor and the said two Daughters said Isaac H. Levy shall be dead, or judicially declared to be an incompetent person, or in the opinion of the Trustee, whose judgment shall be deemed final, not reasonably accessible, then by said George Gordon Battle; and if at the time said instrument is so executed by the Settlor and the said two Daughters said George Gordon Battle shall be dead, or judicially declared to be an incompetent person, or in the opinion of the Trustee, whose judgment shall be deemed final, not reasonably accessible, then by said Michael H. Cardozo, Jr.

"The Trustee will be governed as to its disposition of the principal and interest of the fund left in trust by the terms of said instrument of revocation and/or modification."

### The Plaintiffs' Contentions

Plaintiffs contend that paragraph eighteenth was void from its inception, and that the decedent-settlor could not, and therefore did not, effectively reserve the power to alter, amend or revoke the trust which he created. They assert that the decedent's daughters and their lawful issue, though none of the latter was yet in being at the time, were third-party beneficiaries of the marital separation agreement between the decedent and his wife; that under the applicable New York law, the rights of the third-party beneficiaries became fixed when the separation agreement was executed; that their rights could not thereafter be diminished or divested except with the consent of all the beneficiaries; that in Oc-

tober, 1931, when the decedent and his wife entered into the marital separation agreement, one of their daughters was still a minor; that since that time and until the decedent's death there has been at least one minor beneficiary *in esse* at all times; and that the vested rights of infants are, under New York law, incapable of surrender. Therefore, plaintiffs argue, it was impossible for all the third-party beneficiaries, at any time, to have consented to a diminution of their rights under the separation agreement. The inclusion of paragraph eighteenth in the deed of trust, they assert, was a faulty compliance with the separation agreement. They characterize paragraph eighteenth as a deliberate violation of rights conferred by the separation agreement, and urge, in consequence, that it be treated as though it were without legal content.

### The Government's Contentions

The Government contends that no irrevocable rights were granted by the separation agreement; that the reservation of power contained in paragraph eighteenth of the deed of trust was valid and effective; and that the trust was therefore properly taxed pursuant to § 811(d).

### Discussion

### I

The foundation upon which plaintiffs' position rests is the asserted irrevocability of the rights conferred by the separation agreement upon its third-party beneficiaries. It is well established that the nature of a third-party beneficiary's interest must be determined from the terms of the promise. 2 Williston on Contracts § 364(A) (1936 ed.). The promise in this case, as embodied in the separation agreement, was a promise to create a trust. The securities which would constitute the trust corpus and the dispositive provisions with respect to income and ultimate distribution of the principal were specified. However, there was no expression of the parties' intention to make the trust either revocable or irrevocable.

It is upon the separation agreement's silence in the latter respect that plaintiffs' position here is pivoted. Plaintiffs urge that unless a right to revoke is expressly reserved, the duty of the promisor (here, the decedent husband) to the donee beneficiary (here, the children or grandchildren not *in esse*) cannot be released by the promisee (here, the decedent's wife) or affected by any agreement between the promisee and promisor. Restatement, Contracts § 142. *A fortiori*, the interest of the donee beneficiary could not be affected by the promisor's unilateral action. But here, the Government asserts, the decedent did, in the deed of trust, expressly reserve the right to revoke. The following question is thereby posed: Where the terms of a contract require the execution of a subsequent trust instrument, must a power of revocation, to be effective, be provided for in the initial contract or may it be valid even though it is reserved only in the subsequent instrument?

Plaintiffs urge that the appearance of the reservation in the subsequent instrument, since not expressed in the initial agreement, constitutes a violation of the first contract. Morgan v. Sanborn, 1919, 225 N.Y. 454, 122 N.E. 696, which plaintiffs have cited, is illustrative of the cases in which courts have found that a later instrument violates the terms of an earlier contract. The provisions deemed violated by the later will in that case were plainly expressed in the original agreement to make joint wills. If the separation agreement in the instant case had stated the parties' intention that the trust should be irrevocable, then paragraph eighteenth of the trust deed would constitute a violation of that agreement. However, I am not persuaded to find a violation of rights that were nowhere expressed.

New York law, which is applicable here, requires that all writings which form parts of a single transaction and are designed to effectuate the same purpose be read together, even though they were executed on different dates and

were not all between the same parties. Nau v. Vulcan Rail & Construction Co., 1941, 286 N.Y. 188, 197, 36 N.E.2d 106, reargument denied, 287 N.Y. 630, 39 N.E.2d 267. See also McCulloch v. Canadian Pacific Ry Co., D.C.Minn.1943, 53 F.Supp. 534, 540. This is in accord with the general rule that where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together, even though they do not expressly refer to each other. 17 C.J.S. Contracts § 298; Cf. Parker v. Commissioner, 9 Cir., 1948, 166 F.2d 364, 367. This canon of construction applies with particular force in situations where, as here, one document requires the execution of the second to accomplish its purpose. The rationale of the rule is that by construing the instruments together, the intent of the parties can be perceived and enforced. Its application is generally recognized to extend to instruments relating to the same subject matter even though some of the documents are executed by parties who have no part in executing the others. 3 Corbin on Contracts § 549 (1951 ed.). See Bowersock Mills & Power Co. v. Commissioner of Internal Revenue, 10 Cir., 1949, 172 F.2d 904; D. H. Pritchard, Contractor, Inc., v. Nelson, 4 Cir., 1945, 147 F.2d 939; Peterson v. Miller Rubber Co. of New York, 8 Cir., 1928, 24 F.2d 59. To the extent that the rule in New York includes a consideration of the time lapse between instruments not simultaneously executed, the test is a flexible one. The Court found in Nau v. Vulcan Rail & Construction Co., supra [286 N.Y. 188, 36 N.E.2d 110], that even though separate documents relating to the same subject matter were executed on different dates, they would nevertheless be regarded as "contemporary writings" if they were executed at "substantially the same time." In the case before me, the separation agreement and the trust instrument were executed closely enough in time, approximately six weeks, so that their construction together is neither unreasonable nor unrealistic.

The New York Court of Appeals recently expressed its view that in construing a separation agreement executed by a husband and wife and contemporaneous trust indentures executed by the husband providing for payments to the wife as guardian for the support of their children, the separation agreement and trust indentures were required to be read together, where each instrument made reference to the other and they together constituted part of a single financial plan to provide income for the support of the children. In re Herzog, 1950, 301 N.Y. 127, 131, 135, 136, 93 N.E.2d 336. Examining the documents before me as parts of a single plan, I can find no violation by paragraph eighteenth of any rights granted to third-party beneficiaries by the separation agreement. The plaintiffs' view that the separation agreement required the execution of an irrevocable trust is supported only by the silence of the first agreement. However, where two instruments, taken together, effect the gift and create the trust, I know of no reason why the reservation of power must appear in the first agreement rather than the later one.

Furthermore, far from substantiating the plaintiffs' view of breach, the agreements themselves point to an accord and understanding between the parties. If the trust instrument had provided for revocation or modification by the settlor alone, there might be some basis for the plaintiffs' contention. But here, the settlor had no such right. The revocation and modification provisions of the trust provide no comfort for the plaintiffs' position. They provide that they can be exercised only in conjunction with the wife (and one of several attorneys), and later, children who were beneficiaries. These were all persons whose interests were adverse to the settlor's interest in revocation. On this ground alone, I find it difficult to accept the contention that the revocation and modification provisions constituted a violation of the prior separation agreement.

Moreover, the parties' subsequent acts, as will hereafter appear, support the con-

clusion that they did not intend to confer irrevocable rights upon the donee beneficiaries.

## II

■■ Both parties agree that the incidence of taxation depends upon economic realities, rather than upon words or forms. Helvering v. Tex-Penn Oil Co., 1937, 300 U.S. 481, 493, 57 S.Ct. 569, 81 L.Ed. 755; Tyler v. United States, 1930, 281 U.S. 497, 503, 50 S.Ct. 356, 74 L.Ed. 991. The economic reality that governs the imposition of the estate tax is the shifting upon the decedent's death of some economic benefit. Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power. Thus, at death, the completion of that shifting of the economic benefits of property, which is the real subject of the tax, is accomplished. Chase National Bank of City of New York v. United States, 1929, 278 U.S. 327, 338, 49 S.Ct. 126, 73 L.Ed. 405.

Whether there was such a shifting of the economic benefits of property depends upon whether the decedent realistically possessed a power of revocation at his death. Plaintiffs maintain that he did not, citing Helvering v. Stuart, 1942, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154; Jennings v. Smith, 2 Cir., 1947, 161 F.2d 74; and Estate of Neal, 1947, 8 T.C. 237. All of these cases are readily distinguishable from the instant one. Helvering v. Stuart, supra, was decided on the basis of a finding that Illinois law prevented the revesting of the trust property in the grantor. The Supreme Court did not nullify the trustees' power of revocation which appeared in the trust instruments, but rather construed the provision in the light of local law. In Jennings v. Smith, supra, the expressed power to revoke was a conditional power only, and the adjudication of non-taxability resulted from the fact that the stated condition had not occurred prior to the settlor's death.[6] Estate of Neal, supra, is distinguishable on the ground that the trust deed there expressly prohibited the changing of beneficial interests, and the Tax Court simply enforced the express prohibition of the instrument.

■■ The conclusion that the decedent actually possessed until his death the power of revocation which is expressly reserved in the deed of trust is fully supported by the facts, namely, the decedent's actions subsequent to December 4, 1931. The Government asserts, and has submitted documentary proof which the plaintiffs do not contravene, that the decedent actually exercised his reserved power on four separate occasions, each time effectively modifying the deed of trust. The four modifications were all executed in accordance with the formula set forth in paragraph eighteenth of the trust instrument. The first modification was effected by the decedent, his wife, and an attorney, on April 22, 1932. The second modification was consented to by the same parties on April 6, 1937. After the wife's death, the decedent, his elder two daughters, and an attorney again modified the trust, by a third agreement on May 26, 1947, and by a fourth on November 4, 1949. All of these modifications were made under the authority of, and in the manner prescribed by, paragraph eighteenth of the trust deed. The very first of these modifications provided that certain stock dividends which would, under the original wording of the trust agreement, have become part of the corpus, should be paid to the decedent's wife instead. Although plaintiffs characterize these modifications as repeated violations

---

6. The Court of Appeals recently reversed the District Court's summary judgment dismissing the complaint in an action to obtain a refund of estate taxes, where the settlor reserved a contingent power to reduce or cancel gifts to his children. Since the settlor died without issue, the power never became effective and was not taxable. Hollander v. United States, 2 Cir., 1957, 248 F.2d 247. Since the reserved power in the present case was not contingent, the Court's expression on this subject in Hollander v. United States, is inapposite to the instant problem.

of the rights conferred by the separation agreement, it is evident that as a practical matter the decedent succeeded in exercising precisely the type of control over the trust which makes it subject to taxation upon his death. Thus, the facts take us far beyond the bare existence of the power. Its repeated exercise supports the Government's claim that the trust was properly taxed.

I do not hold that the decedent's acts would alone, in the absence of an express reservation of power in the trust instrument, subject the trust to taxation under § 811(d). Indeed, the reservation is itself sufficient to establish the taxability of the trust, even if the power had never been exercised. Nevertheless, the actual exercise of the reserved power, in addition to revealing the parties' intentions, vividly demonstrates the tax implications of the plaintiffs' position. Plaintiffs ask the Court to find the power void, now that its usefulness, fully exploited, has terminated. Such a determination would frustrate the operation of the Federal estate tax by permitting taxable acts to escape tax consequences.

### III

■ Apart from what has been said up to this point, I am not convinced that the plaintiffs can succeed, even if I were to accept the postulate of their position, namely, the violation of the separation agreement by the insertion of the provisions for revocation and modification in the subsequent trust instrument. Assuming the breach, does it follow that the tax consequences of the trust are thereby changed? I think not. Such a breach would affect the legal relationships of the interested parties; and conceivably, those aggrieved by the breach could seek redress by a suit to reform the subsequent offending instrument. But to say that such a breach transforms an otherwise taxable trust into one that is non-taxable, is to make the Government's right to tax dependent on private arrangements other than the trust itself. Conceivably, such arrangements could be so affected by collateral understandings that it would require little ingenuity to enable a settlor to draw the teeth of § 811(d) while retaining a power to alter, amend, revoke or terminate the trust. Cf. 1 Paul, Federal Estate and Gift Taxation, pp. 325 et seq. (1942 ed.).

### IV

■ Finally, it is significant that the plaintiffs are suing as Executors under the Last Will and Testament of Theodore H. Joseph. As the decedent's personal representatives, they are bound by the decedent's acts. It is not disputed that the decedent conducted himself as if he possessed the power to revoke the trust which has been taxed on that basis. He expressly reserved the power and he exercised it. In addition, the decedent recognized the tax implications which his Executors are now endeavoring to avoid. Paragraph fourteenth of the deed of trust provided as follows:

"All inheritance, estate, transfer, or succession taxes or death duties shall be paid out of the corpus of the trust estate and not charged against the income thereof; *but in the event that any such taxes or death duties are imposed upon the corpus of the trust estate, or upon the estate of the Settlor by reason of the power of revocation or other provision contained in paragraph 'Eighteenth', such taxes or death duties shall be paid by the Settlor, and shall not be a charge against the trust estate;* but all income taxes are to be paid out of the income." (Emphasis added).

In substance, the decedent, with awareness of the tax implications, performed acts of control over the trust which were of a nature that Congress has chosen to regard as sufficient to make the trust taxable upon the settlor's death. Decedent obtained the advantages of his reservation of power; his representatives should not now be permitted to take an inconsistent stand to the detriment of the Government, which has appropriately imposed the tax in reliance upon the decedent's acts.

Since no genuine issues of material fact are presented, but only questions of law, this action may properly be determined on a motion for summary judgment. New York State Guernsey Breeders' Co-Op v. Wickard, 2 Cir., 1944, 141 F.2d 805, 810, 153 A.L.R. 1165; R. H. Macy & Co. v. United States, D.C. S.D.N.Y.1952, 107 F.Supp. 883, 885.

Plaintiffs' motion is denied. Defendant's motion is granted.

Settle order and judgment on notice.