Felix BENITEZ REXACH, Defendant,
Appellant,

v.

UNITED STATES of America,
Plaintiff, Appellee.

No. 7052.

United States Court of 'Appeals
First Circuit.

March 11, 1968.

Walter L. Newsom, Jr., San Juan, P. R., with whom Rene Benitez Rexach, San Juan, P. R., and Brown, Newsom & Cordova, San Juan, P. R., were on brief, for appellant.

Mitchell Rogovin, Asst. Atty. Gen., with whom Francisco A. Gil, Jr., U. S. Atty., and Meyer Rothwacks, Thomas Silk, Louis M. Kauder, John J. McCarthy and Jerome H. Fridkin, Attys., Dept. of Justice, were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an appeal by permission under 28 U.S.C. § 1292(b) from the denial of defendant's motion for a summary judgment dismissing the complaint. The record consists of certain stipulations and exhibits, and the testimony of the defendant, warranting the following findings.[1]

Felix Benitez Rexach, hereafter taxpayer, a native-born Puerto Rican, became an American citizen by virtue of the Jones Act of March 2, 1917, 48 U.S.C. § 731 et seq. In 1944 he left Puerto Rico and became a resident of the Dominican Republic, where he remained until 1961. In July 1958 he executed a written renunciation of his American citizenship before a United States consulate official in the Dominican Republic pursuant to the Immigration and Nationality Act of 1952, 8 U.S.C. § 1481(a) (6). A certificate of loss of nationality was duly approved by the Department of State. On July 26 taxpayer was decreed to be a citizen of the Dominican Republic. Thereafter, he naturally suffered certain losses of status and benefits as a consequence of being declared a non-resident alien of the United States.

Taxpayer was engaged in large scale contracting activities in the Dominican Republic in connection with the then dictator, Trujillo. In 1961 Trujillo was assassinated. The following year taxpayer applied for an American passport, claiming that his 1958 renunciation was

---

1. We use the word "warrant," although we might be prepared to say "compels." However, the government did not move for a partial summary judgment, so we will not decide that question.

not voluntary but had been compelled, against his will, by economic pressure and physical threats that he feared to resist. The United States Consul denied his application, and taxpayer appealed to the Department of State. The Board of Review on the Loss of Nationality took taxpayer's testimony and accepted it, as a result of which his certificate of loss of nationality was cancelled, and his passport application granted. There followed the present chapter. The Commissioner of Internal Revenue assessed taxpayer with an income tax on account of income earned in the Dominican Republic during the years following his renunciation of citizenship, alleged to be due because of his continued American citizenship. Cook v. Tait, 1924, 265 U.S. 47, 44 S.Ct. 444, 68 L.Ed. 895. Taxpayer not responding, the present suit was brought to foreclose liens in payment of such taxes. Taxpayer moved, unsuccessfully, for summary judgment on the claim that no taxes could be due.

Taxpayer concedes that as a matter of law he is precluded by the record from claiming that he ever ceased to be a United States citizen, and concedes that during the period in question he was a de jure citizen. However, he says that he was not a "de facto" citizen.

> "Appellant does not claim that his citizenship was lost as a result of the renunciation, but that as a result of the determination of the Secretary of State and consequent issue of the Certificate of Loss of Nationality, the United States was freed of its obligations to him as a citizen and he in fact lived and existed as an alien to the United States during the period in question."

He concludes that since the United States "owed" him, or apparently owed him, no citizen's protection, he, in turn, owed no tax.

While there is language in Cook v. Tait, supra, indicative that these are

reciprocal obligations, the Court also observed that "government by its very nature benefits the citizen * * *." 265 U.S. at 56, 44 S.Ct. at 445. We cannot agree that the reciprocal obligations are mutual, at least in the sense that taxpayer contends. It is sufficient that the government's stem from its de jure relationship without regard to the subjective quid pro quo in any particular case. We will not hold that assessment of benefits is a prerequisite to assessment of taxes.[2]

Affirmed.

---

2. The hypotheticals suggested by taxpayer during oral argument involved aspects of estoppel on the part of the government.

Whatever may be the merit of such cases, that element is not present here.