WILLIAM LEFEVER, QUALIFIED HEIR-TRANSFEREE OF THE ASSETS OF THE ESTATE OF BLANCHE KNOLLENBERG, AND BETTY LOU LEFEVER, QUALIFIED HEIR-TRANSFEREE OF THE ASSETS OF THE ESTATE OF BLANCHE KNOLLENBERG, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 19915–92.  Filed October 26, 1994.

*Patrick J. Regan* and *Juandell D. Glass,* for petitioners.
*Elizabeth Downs,* for respondent.

PARKER, *Judge:* Respondent determined a deficiency in additional Federal estate tax under section 2032A(c) in the amount of $38,154.33 and an addition to tax under section 6651(a)(1) in the amount of $9,538.58 against petitioner William LeFever. Respondent determined a deficiency in additional Federal estate tax under section 2032A(c) in the amount of $91,850.95 and an addition to tax under section 6651(a)(1) in the amount of $22,962.74 against petitioner Betty Lou LeFever.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the issue to be decided is whether petitioners are liable for the additional estate tax under section 2032A(c) because they cash rented portions of the farmland as to which an election had been made to specially value under section 2032A(a). In reaching our decision on that issue, we must determine whether petitioners are bound by a duty of consistency that precludes them from denying that the farmland was qualified real property at the time of decedent's death and from challenging the validity of the election for special use valuation of the farmland.

### FINDINGS OF FACT

Petitioners William LeFever (petitioner) and Betty Lou LeFever (Mrs. LeFever) resided in Augusta, Kansas, at the time they filed their petition in this Court. Petitioners are husband and wife. Decedent, Blanche Knollenberg, died on July 24, 1983. At the time of her death, decedent was a resident of Augusta, Kansas. Petitioner was the duly appointed executor of decedent's estate. Mrs. LeFever is decedent's daughter. Petitioners are decedent's heirs and transferees.

At the time of her death, decedent owned real property that included six parcels of farmland located in Butler

---

[1] Respondent stipulated that petitioners are not liable for the additions to tax under sec. 6651(a)(1). In her opening brief respondent conceded that petitioner Betty Lou LeFever is liable for the additional estate tax only with respect to the land that was cash rented. As a result, respondent conceded a portion of that deficiency.

County, Kansas. In her last will and testament, decedent devised one parcel (parcel 1) to her grandson, Joe B. LeFever, four parcels (parcels 2, 3, 4, and 6) to Mrs. LeFever, and one parcel (parcel 5) to petitioner.

For the years prior to decedent's death, Joseph F. Shupe (Mr. Shupe), an accountant, had prepared income tax returns for decedent and petitioners. Petitioner asked Mr. Shupe to prepare the estate tax return for decedent's estate. After reviewing information given to him by petitioners, the instructions to Form 706 (U.S. Estate Tax Return), the Internal Revenue Code, and other publications, Mr. Shupe concluded that parcels 1 through 5 qualified for special use valuation under section 2032A. Parcel 6, consisting of 100 acres of cultivation land and almost 50 acres of pasture, did not qualify for the special use valuation.

Mr. Shupe prepared a Form 706, U.S. Estate Tax Return, for decedent's estate. At the time he prepared the estate tax return, it was Mr. Shupe's opinion that the election for special use valuation was valid.

On or about April 24, 1984, in his capacity as executor of decedent's estate, petitioner filed Form 706, U.S. Estate Tax Return, on behalf of decedent's estate,[2] which included the following attachments:

(1) Appraisals of parcels 1 through 6;

(2) Notice of Election of Section 2032A of the Internal Revenue Code (notice of election);

(3) Statement of Material Participation;

(4) Agreement of Consent to Application of Section 2032A of the Internal Revenue Code signed by petitioner;

(5) Agreement of Consent to Application of Section 2032A of the Internal Revenue Code signed by Joe B. LeFever; and

(6) Agreement of Consent to Application of Section 2032A of the Internal Revenue Code signed by Mrs. LeFever.

Based on comparable sales, the appraiser of the land valued the real property, as of the date of decedent's death, as follows: Parcel 1 had a fair market value of $203,000; parcel 2 had a fair market value of $149,000; parcel 3 had a fair

---

[2] The original Form 706, U.S. Estate Tax Return, could not be located, but the parties submitted into evidence a photocopy of a copy of the original estate tax return that had been retained by petitioners. The parties agree that the photocopy accurately reflects the estate tax return that was filed and that the return and the attachments to the return were signed where a signature is indicated by the party indicated.

market value of $72,000; parcel 4 had a fair market value of $168,000; parcel 5 had a fair market value of $120,000; and parcel 6 had a fair market value of $68,000. The comparable sales used by the appraiser did not identify or distinguish the composition of the land, in terms of cultivation or pastureland. Under the capitalization of income method, the appraiser valued parcels 1 through 5 for purposes of the special use valuation under section 2032A as follows:

| Parcel/land use | No. of acres | Cash rent per acre[1] | Tax per acre[2] | Value per acre[3] | Total valuation |
|---|---|---|---|---|---|
| 1 Cultivation | 107.0 | $33.70 | $3.57 | $258.6266 | $27,673.05 |
| Pasture | 53.0 | 15.15 | 3.57 | 99.3991 | 5,268.15 |
| Total | 160.0 | - - - | - - - | - - - | 32,941.20 |
| 2 Cultivation | 42.7 | 33.70 | 2.04 | 271.7597 | 11,604.14 |
| Pasture | 117.3 | 15.15 | 2.04 | 112.5322 | 13,200.02 |
| Total | 160.0 | - - - | - - - | - - - | 24,804.16 |
| 3 Cultivation | 37.6 | 33.70 | 3.05 | 263.0901 | 9,892.19 |
| Pasture | 42.4 | 15.15 | 3.05 | 103.8627 | 4,403.78 |
| Total | 80.0 | - - - | - - - | - - - | 14,295.97 |
| 4 Cultivation | 131.7 | 33.70 | 2.57 | 267.2103 | 35,191.60 |
| Pasture | 28.3 | 15.15 | 2.57 | 107.9828 | 3,055.91 |
| Total | 160.0 | - - - | - - - | - - - | 38,247.51 |
| 5 Cultivation | 15.9 | 33.70 | 1.46 | 276.7382 | 4,400.14 |
| Pasture | 104.1 | 15.15 | 1.46 | 117.5107 | 12,232.87 |
| Total | 120.0 | - - - | - - - | - - - | 16,633.01 |

[1] Average annual gross cash rental per acre for comparable land located in the locality of decedent's farm from 1978 through 1982.
[2] Average annual per-acre real estate tax from 1978 through 1982.
[3] Net cash rental per acre (gross cash rental per acre less per-acre real estate tax) divided by 11.65 percent (the average annual effective interest rate for all new Federal land bank loans).

As a result of the special use valuation under section 2032A, the estate tax return reported a total gross estate of $379,323, allowable deductions of $23,698, and a taxable estate of $355,625. The aggregate fair market value of parcels 1 through 5 without the special use valuation was $712,000 ($203,000 + $149,000 + $72,000 + $168,000 + $120,000). The aggregate value of parcels 1 through 5 with the special use valuation was $126,921.85 ($32,941.20 + $24,804.16 + $14,295.97 + $38,247.51 + $16,633.01). As a result of the special use valuation, the taxable estate was reduced by some $585,078 ($712,000 − $126,922).

Petitioner, in his capacity as executor of the estate, signed and filed with the estate tax return the notice of election to value parcels 1 through 5 at the reduced special use valu-

ation provided for in section 2032A.[3] The special use valuation election under section 2032A was not made for parcel 6.[4] The notice of election stated that decedent had acquired parcels 1 through 5 upon her husband's death on November 18, 1950, and that the property had remained decedent's continuously until her death.

Petitioner, in his individual capacity, signed the statement of material participation, in which he stated:

I, William F. Le Fever, son-in-law of the late Blanche (NMN) Knollenberg, affirm, under penalty of perjury, that the following is a true and correct statement concerning my material participation in the farming of those properties under which on [sic] election of section 2032A of the Internal Revenue Code is being made.

My mother-in-law went on social security retirement in 1967. Beginning in 1961, I took over the farming and management of all the properties relating to this election. Those identified as parcels #1 and #2 I operated through 1966 and parcels #3 and #4 through 1980. I have always made those decisions relating to crop rotations, seeding of grass, contouring, establishing tenant contracts, etc. on all the parcels including #5, which primarily consists of pasture on which I rarely grazed my own cattle. This has been reported as farming self-employed income on my personal tax returns over the years.

Petitioner, Mrs. LeFever, and Joe B. LeFever each executed an individual Agreement of Consent to Application of Section 2032A of the Internal Revenue Code. Each of the agreements of consent stated that the named individual was decedent's qualified heir as defined in section 2032A. Each of the agreements of consent further stated that, in consideration of the election to value qualified property in accordance with section 2032A, the qualified heir consented to the personal liability incident to the application of section 2032A with respect to the real property described in the agreement of consent. Each of the agreements of consent designated petitioner as agent for all dealings with the Internal Revenue Service (IRS) on matters arising under section 2032A.

Petitioner, as such agent, also filed a document, entitled an Agreement to Special Valuation Under IRC Section 2032A, which was signed by petitioner, Mrs. LeFever, and Joe B.

---

[3] The notice of election refers to properties identified on Schedule A, Form 706, items 2 through 6. Items 2 through 6 on Schedule A refer to parcels 1 through 5, respectively.

[4] The highest and best use of parcel 6 was as farmland, and parcel 6 was valued as such. The value of parcel 6 as reported on decedent's Federal estate tax return is not at issue in this case.

LeFever, as decedent's qualified heirs. That Agreement to Special Valuation Under IRC Section 2032A provided in part:

We, Betty Lou Le Fever, Joe B. Le Fever & William F. Le Fever being all of the qualified heirs * * * having interests in the property which is qualified real property and which is valued under section 2032A of the Internal Revenue Code, do hereby approve of the election being made by the Executor/Administrator of the * * * [Estate of Blanche Knollenberg], pursuant to section 2032A, to value said property on the basis of the qualified use to which the property is devoted and do hereby enter into this agreement pursuant to section 2032A(d).

The undersigned agree and consent to the application of subsection (c) of section 2032A of the Code with respect to the qualified real property described, with complete legal description, in the attached Exhibit A which is incorporated herein for all purposes.

More specifically, the undersigned qualified heirs expressly agree and consent to personal liability under subsection (c) of section 2032A for the additional tax imposed by that subsection with respect to their respective interests in the property described in Exhibit A in the event of certain early dispositions of the property or early cessation of the qualified use of the property. * * *

* * * * * * *

It is understood by all interested parties that this agreement is a condition precedent to the election of special use valuation under section 2032A of the Code * * *

A farm cash-rent receivable from Warren Corbin for January through June of 1983 in the amount of $3,158 was reported on Schedule F (i.e., other miscellaneous property not reportable under any other schedule) of the estate tax return. The estate tax return did not identify the property being rented by Warren Corbin or Warren Corbin's relationship to decedent. The appraisal report makes two references to farm tenants. The appraisal report indicates that, as of the date of the appraisal, October 11, 1983, the Burress brothers were the farm tenants of parcels 1 and 2, and that the tenant of parcel 6 was not taking proper care of the farm. The tenant of parcel 6 was not identified in the appraisal or elsewhere on the estate tax return or the attachments thereto.

After the estate tax return was filed by petitioner, it was reviewed by an IRS officer who, on July 26, 1984, prepared a document entitled Notice of Special-Use Valuation Election (IRC 2032A). That notice indicated that the request for special use valuation was accepted and that the estate tax return was not selected for examination. That notice was

approved on September 27, 1984. The estate tax return was accepted by the IRS as filed, and the special use valuation election was allowed without audit.

The IRS initiated a program to monitor whether qualified heirs were complying with the requirement that they continue to use property that had been specially valued under section 2032A for its qualified use. On July 27, 1990, as part of that program, the IRS sent a questionnaire to petitioner as the designated agent of decedent's qualified heirs. Petitioner completed the questionnaire on August 10, 1990, and mailed it to the IRS. The IRS received the completed questionnaire on August 13, 1990. Petitioner indicated in his response to the questionnaire that Robert Skaer was farming parcels 1 and 2, and that Warren Corbin was farming parcels 3, 4, and 5. Petitioner also indicated that Robert Skaer and Warren Corbin were unrelated to either decedent or the qualified heirs. Petitioner further indicated that Robert Skaer was crop sharing the tillable land on a one-third to landlord/two-thirds to tenant basis and cash renting the pasture and meadowland for $12 per acre. Warren Corbin was cash renting the tillable land for $5,100 and the pasture and meadowland for $12 per acre.

On October 1, 1990, James Kaufman (Mr. Kaufman), an IRS estate tax attorney, sent a letter to petitioner requesting more detailed information, including the number of acres of pasture and the number of acres of cultivation land being cash rented, the date that the cash-renting agreements originated, the legal description of the land being cash rented, and a copy of the leases if available. By letter dated February 11, 1991, Mr. Shupe informed Mr. Kaufman that the following acreage of parcels 2 through 5 was being cash rented:

*Acres cash rented*

| Tenant/use | Parcel 2 | Parcel 3 | Parcel 4 | Parcel 5 |
|---|---|---|---|---|
| Skaer pasture | 110 | - - - | - - - | - - - |
| Corbin cultivation | - - - | 15 | 123 | - - - |
| Pasture | - - - | - - - | 24 | 120 |
| Total | 110 | 15 | 147 | 120 |

Mr. Shupe stated that the balance of the acreage was being rented on a sharecrop basis.

By separate notices of deficiency, dated July 22, 1992, respondent determined that petitioners are liable for a deficiency in additional estate tax under section 2032A(c) because they ceased to use the property for its qualified use. The notices of deficiency specified July 24, 1985, which is 2 years after the date of decedent's death, as the date of cessation of qualified use. In the computation of the additional estate tax deficiencies, respondent used the comparable sales value (fair market value) reported in the appraisal report attached to the estate tax return. In the computation, parcel 5 was valued at $120,000 and parcels 2, 3, and 4 were valued in the aggregate at $389,000 ($149,000 + $72,000 + $168,000). This case involves parcels 2 through 5 only.

OPINION

*Section 2032A(a): Special Use Valuation Election*

Generally, for estate tax purposes, a decedent's property is valued at its fair market value based on its highest and best use. Sec. 2031(a); sec. 20.2031–1(b), Estate Tax Regs. Section 2032A, however, permits an estate to elect to value real property used for farming and small business purposes on the basis of income capitalization rather than on the basis of highest and best use. Sec. 2032A(e)(7); *Williamson v. Commissioner,* 93 T.C. 242, 244 (1989), affd. 974 F.2d 1525 (9th Cir. 1992); *Estate of Heffley v. Commissioner,* 89 T.C. 265, 271 (1987), affd. 884 F.2d 279 (7th Cir. 1989). Section 2032A is intended to allow the decedent's family to continue to operate the farm or small business, rather than being forced to sell the land to pay estate taxes. *Estate of Mapes v. Commissioner,* 99 T.C. 511, 516–517 (1992).

To qualify for the special use valuation under section 2032A, the following requirements must be satisfied:

(1) The property must be qualified real property;

(2) at the time of death, the decedent must have been a citizen or resident of the United States; and

(3) the executor of the decedent's estate must elect the application of section 2032A and file the agreement referred to in section 2032A(d)(2) (the section 2032A(d)(2) agreement).

Sec. 2032A(a)(1). Each person who has an interest, whether or not in possession, in any property designated in the section 2032A(d)(2) agreement must sign the agreement consenting to the application of section 2032A(c) with respect to such property. Sec. 2032A(d)(2). If these requirements are met, the value of the qualified real property for estate tax purposes is its value based on its qualified use. Sec. 2032A(a)(1). The election, once made, is irrevocable. Sec. 2032A(d)(1).

*Section 2032A(b): Qualified Real Property*

Real property located in the United States and designated in the section 2032A(d)(2) agreement will constitute qualified real property if the following additional requirements of section 2032A(b)(1)[5] are satisfied:

(1) The real property was acquired from or passed from the decedent to a qualified heir of the decedent (sec. 2032A(b)(1));

(2) on the date of the decedent's death the real property was being used for a qualified use by the decedent or a member of the decedent's family (sec. 2032A(b)(1)) (the date of death qualified use requirement);

(3) during the 8-year period ending on the date of the decedent's death, there have been periods aggregating 5 years or more during which the real property was owned by the decedent or a member of the decedent's family and used for a qualified use by the decedent or a member of the

---

[5] Sec. 2032A(b)(1) provides:

(1) IN GENERAL.—For purposes of this section, the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, but only if—

(A) 50 percent or more of the adjusted value of the gross estate consists of the adjusted value of real or personal property which—

(i) on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, and

(ii) was acquired from or passed from the decedent to a qualified heir of the decedent.

(B) 25 percent or more of the adjusted value of the gross estate consists of the adjusted value of real property which meets the requirements of subparagraphs (A)(ii) and (C),

(C) during the 8-year period ending on the date of the decedent's death there have been periods aggregating 5 years or more during which—

(i) such real property was owned by the decedent or a member of the decedent's family and used for a qualified use by the decedent or a member of the decedent's family, and

(ii) there was material participation by the decedent or a member of the decedent's family in the operation of the farm or other business, and

(D) such real property is designated in the agreement referred to in subsection (d)(2).

decedent's family (sec. 2032A(b)(1)(C)(i)) (the 5-year qualified use requirement);

(4) during the 8-year period ending on the date of the decedent's death, there have been periods aggregating 5 years or more during which there was material participation by the decedent or a member of the decedent's family in the operation of the farm or other business (sec. 2032A(b)(1)(C)(ii)) (the 5-year material participation requirement);[6]

(5) 50 percent or more of the adjusted value of the gross estate[7] consists of the adjusted value of real or personal property[8] which (a) on the date of the decedent's death was being used for a qualified use by the decedent or a member of the decedent's family and (b) was acquired from or passed from the decedent to a qualified heir of the decedent (sec. 2032A(b)(1)(A)(i) and (ii)) (the 50-percent test); and

(6) 25 percent or more of the adjusted value of the gross estate consists of the adjusted value of real property which (a) was acquired from or passed from the decedent to a qualified heir of the decedent and (b) satisfies the 5-year qualified use test and the 5-year material participation test (sec. 2032A(b)(1)(B)) (the 25-percent test).

"Qualified use" is defined as the devotion of the property to use as a farm for farming purposes, or use in a trade or business other than the trade or business of farming. Sec. 2032A(b)(2). The use must constitute a trade or business for either of the foregoing uses to qualify. *Martin v. Commissioner*, 84 T.C. 620, 627 (1985), affd. 783 F.2d 81 (7th Cir. 1986). The use will constitute a trade or business only if the decedent or a member of the decedent's family shares in the financial risk of the activity. Cash rental use of the property is not a trade or business and, therefore, cash rental of the property is not a qualified use. *Id.* at 627–628. It should be noted, however, if the decedent cash rented the property to a member of his or her family and that family member used

---

[6] Material participation is determined in a manner similar to the manner used for purposes of sec. 1402(a)(1), relating to net earnings from self-employment. Sec. 2032A(e)(6).

[7] The adjusted value of the gross estate means the value of the gross estate for estate tax purposes (determined without regard to sec. 2032A), reduced by any amounts allowable as a deduction under sec. 2053(a)(4). Sec. 2032A(b)(3)(A).

[8] The adjusted value of any real or personal property means the value of such property for estate tax purposes (determined without regard to sec. 2032A), reduced by any amounts allowable as a deduction in respect to such property under sec. 2053(a)(4). Sec. 2032A(b)(3)(B).

the property for a qualified use, the family member's use of the property would satisfy the requirements of section 2032A(b). Sec. 2032A(b)(1); see *Williamson v. Commissioner,* 93 T.C. at 249–250.[9]

The statute provides certain relief to the estates of decedents who were surviving spouses, retired, or disabled. If property is qualified real property with respect to the predeceased spouse, and such property was acquired from or passed from the predeceased spouse to the surviving spouse, active management of the farm or other business by the surviving spouse is treated as material participation in the farm or other business by such surviving spouse.[10] Sec. 2032A(b)(5). If on the date of the decedent's death, the decedent was receiving old-age benefits under title II of the Social Security Act for a continuous period ending on such date or was disabled for such continuous period, then the 5-year material participation test is applied to the 8-year period ending on the date on which the longer of such continuous period began. Sec. 2032A(b)(4)(A).

## *Section 2032A(c): Imposition of Additional Estate Tax*

In enacting the special use valuation provisions, Congress recognized that an estate's beneficiaries would enjoy an unintended windfall if they did not continue to use the property for farming or small business purposes, at least for a reasonable period of time after the decedent's death. *Williamson v. Commissioner,* 93 T.C. at 244; *Martin v. Commissioner,* 84 T.C. at 626. In order to avoid windfall benefits for beneficiaries, section 2032A(c)(1) imposes an additional estate tax

---

[9] As originally enacted, sec. 2032A(b)(1) did not contain the words "by the decedent or a member of the decedent's family". The Economic Recovery Tax Act of 1981, Pub. L. 97–34, sec. 421(b)(1), 95 Stat. 172, 306, amended sec. 2032A(b)(1) by inserting those words throughout sec. 2032A(b)(1). The amendment did not change the rules governing the use of the property after the decedent's death. The committee report explains:

To facilitate the orderly transfer of responsibility for farming operations before death, the bill provides that the qualified use requirement of present law, applicable to periods on and before the date of the decedent's death (sec. 2032A(b)(1)), may be satisfied if either the decedent or a member of the decedent's family uses real property otherwise eligible for current use valuation as a farm for farming purposes * * *

\* \* \* \* \* \* \*

The bill does not change the present requirement that the qualified heir owning the real property after the decedent's death use it in the qualified use throughout the recapture period.

[H. Rept. 97–201 (1981), 1981–2 C.B. 352, 382.]

[10] Active management means the making of management decisions of a business, other than the daily operating decisions. Sec. 2032A(e)(12).

on beneficiaries who do not continue the qualified use of the property for a 10-year period after the decedent's death. The additional estate tax is imposed if, during the 10-year period after the date of the decedent's death,[11] the qualified heir disposes of any interest in the qualified real property (other than to a member of his family), or the qualified heir ceases to use the qualified property for the use that qualified the property for special use valuation. Sec. 2032A(c)(1).

Section 2032A(c)(7)(A)(i) provides a 2-year grace period commencing on the date of the decedent's death during which period qualified heirs may begin their qualified use of the property. The 10-year recapture period is extended by the period following the decedent's death and the date the qualified heir commences using the property for its qualified use. Sec. 2032A(c)(7)(A)(ii). Although property used by a member of the decedent's family for a qualified use may have qualified for the special use valuation election under section 2032A(b), it is the qualified heir who must start and continue the qualified use of the property during the recapture period. *Williamson v. Commissioner,* 93 T.C. at 247–248; see *supra* note 9; compare sec. 2032A(b)(1) with sec. 2032A(c)(1).

Cash lease of the property is not a qualified use of the property. Therefore, cash lease of the property generally constitutes a cessation of qualified use. *Stovall v. Commissioner,* 101 T.C. 140, 148–150 (1993), and cases discussed therein. An exception to this rule applies to the decedent's surviving spouse. If the qualified heir is the decedent's surviving spouse, the surviving spouse is not treated as failing to use the qualified property for its qualified use solely because such spouse rents the property to a member of such spouse's family on a net cash basis. Sec. 2032A(b)(5)(A).[12] A qualified heir other than the surviving spouse of the decedent, however, cannot satisfy the requirement that he or she continue the qualified use by cash renting the property to a family member. *Williamson v. Commissioner,* 93 T.C. at 249–252.

Real property ceases to be used for the qualified use if it fails to be used for the same qualified use under section

---

[11] For decedents dying before Jan. 1, 1982, qualified heirs were required to use the property for its qualified use for a period of 15 years.

[12] The Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100–647, sec. 6151(a), 102 Stat. 3342, 3724, amended sec. 2032A(b)(5)(A) by adding this provision, applicable to rentals occurring after Dec. 31, 1976.

2032A(b)(2)(A) or (B) that was the basis of its original qualification. Sec. 2032A(c)(6)(A). Additionally, real property ceases to be used for the qualified use if, during any period of 8 years ending after the date of the decedent's death and before the date of the death of the qualified heir, there have been periods aggregating more than 3 years during which there was no material participation in the operation of the farm or other business by (a) the decedent or a member of the decedent's family in the case of periods during which the property was held by the decedent or (b) by the qualified heir or any member of his family in the case of periods during which the property was held by such qualified heir. Sec. 2032A(c)(6)(B).

The statute provides some relief from the material participation requirement for "eligible qualified heirs". An eligible qualified heir means a qualified heir who is the surviving spouse of the decedent, has not attained the age of 21, is disabled, or is a student.[13] Sec. 2032A(c)(7)(C). The active management of a farm or other business by an eligible qualified heir or a fiduciary of an eligible qualified heir who is under the age of 21 or disabled is treated as material participation by such eligible qualified heir in the operation of the farm or other business.[14] Sec. 2032A(c)(7)(B).

In summary, each of the following events constitutes a cessation of qualified use by the qualified heir, any one of which will trigger the imposition of the additional estate tax:

(1) Failure to continue the same qualified use of the property under section 2032A(b)(2)(A) or (B) which was the basis of its original qualification;

(2) failure by the qualified heir to commence such use within the 2-year grace period;

(3) failure by the qualified heir to continue such use during the recapture period; or

(4) failure by the qualified heir or a member of such qualified heir's family to materially participate in the operation of the farm or other business.

---

[13] An individual is treated as a student with respect to periods during any calendar year if, and only if, such individual is a student within the meaning of sec. 151(e)(4) (now sec. 151(c)(4)) for such calendar year. Sec. 2032A(c)(7)(D).

[14] In the case of an eligible qualified heir who is under the age of 21, disabled, or a student, the active management by the eligible qualified heir or his fiduciary will be treated as material participation by such eligible qualified heir only during the periods during which such heir is under the age of 21, disabled, or a student. Sec. 2032A(c)(7)(B).

If qualified real property is disposed of or ceases to be used for a qualified use, the period of limitations for the assessment of any additional estate tax under section 2032A(c) does not expire before the expiration of 3 years from the date the Secretary is notified of the disposition or cessation. Sec. 2032A(f); *Stovall v. Commissioner,* 101 T.C. at 150–155. Respondent determined a deficiency in additional estate tax under section 2032A against petitioners as qualified heirs of decedent.

## Positions of the Parties

Petitioners contend that the real property at issue was not qualified real property at the date of decedent's death, and, therefore, the election to specially value the property under section 2032A was invalid. Petitioners argue that, because the election was invalid, the statute of limitations for assessment of an estate tax deficiency began running on April 24, 1984, the date the estate tax return was due. Petitioners contend that the assessment of any estate tax deficiency against decedent's estate is barred by the running of the statute of limitations under section 6501(a), and that the assessment of any estate tax deficiency against them as transferees of the estate is barred by the running of the statute of limitations under section 6901(c).[15] Petitioners' arguments were not raised in any meaningful way until the commencement of trial, but the Court concludes that the issues were tried by consent of the parties and are properly before the Court.[16]

---

[15] Sec. 6901(c) provides that the period of limitations for assessment of liability of a transferee, in the case of an initial transferee, is within 1 year after the expiration of the period of limitation for assessment against the transferor.

[16] After the trial in this case, respondent was granted leave to file a motion to amend the answer to conform the pleadings to the evidence. The motion to amend the answer to raise the affirmative defenses of estoppel, quasi-estoppel, and duty of consistency was granted. Petitioner filed a motion to reconsider the granting of respondent's motion to amend the answer, asserting that the issue was not tried with petitioners' consent. The Court disagreed and denied their motion.

The petition in this case is rather confusing in that the assignments of error in par. 4 seem to be inconsistent with the "facts" alleged in support thereof in par. 5 and with the case actually tried by the parties. Par. 4(a) alleges that respondent erred in using the date-of-death fair market value of the property rather than the special use value "correctly reported". Par. 4(b) alleges that respondent erred in determining that petitioners ceased to use the property for a qualified use. As "facts" in support of these assignments of error, par. 5 of the petition challenges the validity of the special use election and raises a statute of limitations issue.

In the petition, petitioners repeatedly referred to a deficiency in estate tax and failed to distinguish between the estate tax imposed upon a decedent's estate under sec. 2001 and the additional estate tax imposed upon qualified heirs under sec. 2032A(c); these are separate and distinct taxes, subject to separate provisions of the Internal Revenue Code and imposed on different

Respondent argues that petitioners knowingly and intentionally consented to the election to specially value the property under section 2032A and are bound by the election. Respondent raises the doctrine of quasi-estoppel or duty of consistency. See *supra* note 16.

*Alleged Notice of Invalidity of Section 2032A Election*

Petitioners contend that the information provided on the estate tax return and the attachments thereto was sufficient to establish that the election was invalid, and that the IRS "clearly was on notice of the fact that the election was invalid". We disagree.

In the notice of election, petitioner stated that decedent had acquired the property from her husband upon his death on November 18, 1950, and owned it continuously until her death. In his statement of material participation, petitioner stated that, beginning in 1961, he took over the farming and management of all the properties for which the election was being made. He also stated that he had always made the decisions relating to crop rotations, seeding of grass, contouring, and establishing tenant contracts on all parcels, and that he reported the income from the operation of the property as self-employed income on his income tax returns over the years. Since leasing the property under a crop-share arrangement would constitute a qualified use of the property, petitioner's statement that he made all decisions establishing tenant contracts would not put respondent on notice that the property was not being used for a qualified use.

---

taxpayers. Additionally, the statute of limitations for assessment of a deficiency in estate tax under sec. 2001 is provided for in sec. 6501, while the statute of limitations for assessment of a deficiency in additional estate tax under sec. 2032A(c) is provided for in sec. 2032A(f).

In the petition, without reference to sec. 6501(a), sec. 6901(c), or sec. 2032A(f), petitioners claimed that the assessment of the tax was barred by the running of the period of limitations. In the answer, respondent denied that the statute of limitations bars any assessment or collection of the tax. She asserted that, under sec. 2032A(f), the period of limitations for assessing the additional estate tax imposed by sec. 2032A(c) does not expire until 3 years after respondent is notified of the cessation of the qualified use. She further asserted that the earliest date on which she could be considered to have been notified of the cessation of the qualified use was August 13, 1990, the date the IRS received petitioners' answers to the questionnaire regarding the heirs' use of the property. Because the notices of deficiency were issued on July 22, 1992, which is within 3 years of the date of notification, respondent denied that the statute of limitations bars the assessment of the tax. Petitioners did not file a reply to the answer.

Petitioners never clearly articulated their argument until the trial. The issue was not clearly raised in the pleadings, but the Court finds that it was tried by consent of the parties. Petitioners' motion for reconsideration was denied, as indicated above, and their motion to dismiss with entry of judgment for petitioners, filed at the beginning of the trial, will also be denied.

Similarly, listing the farm cash-rent receivable from War-ren Corbin on Schedule F of the estate tax return did not show that parcels 2 through 5 were not being used for a qualified use. The statement of material participation indicated that petitioner reported on his income tax return all income from the parcels for which the election was being made. The appraisal report mentioned that the Burress brothers were the farm tenants of parcels 1 and 2 and that the tenant of parcel 6 was not taking proper care of that par-cel. The appraisal report did not identify the tenant of parcel 6 but did state that parcel 6 did not qualify for the special use valuation. Under the circumstances, it would not be unreasonable for the IRS to assume that Warren Corbin was cash renting parcel 6.

In his statement of material participation attached to the estate tax return, petitioner stated that, beginning in 1961, he "took over the farming and management of all the prop-erties" for which the election was being made. He further stated that decedent began receiving Social Security benefits in 1967. Because decedent was receiving Social Security benefits, the 5-year material participation test is applied to the 8-year period ending on the date on which decedent began receiving the Social Security benefits. Petitioner was farming and managing the property for 6 of the 8 years end-ing on the date on which decedent began receiving Social Security benefits. Therefore, the 5-year material participa-tion test was satisfied.

As a result of the special use valuation under section 2032A, the estate tax return reported a total gross estate of $379,323, allowable deductions of $23,698, and a taxable estate of $355,625. The aggregate fair market value of par-cels 1 through 5 without the special use valuation was $712,000 ($203,000 + $149,000 + $72,000 + $168,000 + $120,000). The aggregate value of parcels 1 through 5 with the special use valuation was $126,921.85 ($32,941.20 + $24,804.16 + $14,295.97 + $38,247.51 + $16,633.01). As a result of the special use valuation, the taxable estate was reduced by approximately $585,078 ($712,000 − $126,922).

The adjusted value of the gross estate is $940,703 ($585,078 + $355,625). The adjusted value of real property that (a) on the date of decedent's death was being used for a qualified use by decedent or a member of decedent's family

and (b) was acquired from or passed from decedent to a qualified heir of decedent was $712,000, which is more than 50 percent of $940,703. All of the property for which the section 2032A election was made passed from decedent to qualified heirs. Therefore, the 50-percent test and the 25-percent test are satisfied.

Both petitioner and Mr. Shupe testified that, at the time the estate tax return was filed, they thought the election to specially value the property was proper. Petitioner agreed that his statement of material participation was submitted to the IRS to persuade the IRS that such election was proper. He admitted that his statement of material participation was not intended as notification to the IRS that the election was invalid. In fact, during the audit, Mr. Shupe continued to argue that the special use valuation election was proper.[17] We conclude that the estate tax return and the attachments thereto neither put respondent on notice that the election was invalid nor established that the election was invalid. We turn now to respondent's quasi-estoppel or duty of consistency argument.

## Duty of Consistency

This Court has applied general equitable principles in deciding matters over which the Court otherwise has jurisdiction. *Woods v. Commissioner,* 92 T.C. 776, 784–785 (1989). The equitable doctrine of "quasi-estoppel" or "the duty of consistency" applies in this Court. *Herrington v. Commissioner,* 854 F.2d 755, 757 (5th Cir. 1988), affg. *Glass v. Commissioner,* 87 T.C. 1087 (1986); *Unvert v. Commissioner,* 72 T.C. 807, 814–817 (1979), affd. 656 F.2d 483 (9th Cir. 1981); *Mayfair Minerals, Inc. v. Commissioner,* 56 T.C. 82 (1971), affd. 456 F.2d 622 (5th Cir. 1972). The "duty of consistency" is based on the theory that the taxpayer owes the Commissioner the duty to be consistent with his tax treatment of items and will not be permitted to benefit from his own prior error or omission. *Southern Pac. Transp. Co. v. Commissioner,* 75 T.C. 497, 838–839 (1980). The duty of consistency doctrine prevents a taxpayer from taking one

---

[17] Mr. Shupe candidly admitted that he did not change his view until petitioners' present counsel raised the new statute of limitations issues. Thus, as a factual matter, petitioners' argument that the IRS was on notice that the election was invalid borders on the frivolous.

position one year and a contrary position in a later year after the limitations period has run on the first year. *Herrington v. Commissioner, supra* at 757, and cases cited therein.

A taxpayer gaining governmental benefits on the basis of a representation or asserted position is thereafter estopped from taking a contrary position in an effort to escape taxes. *United States v. Matheson,* 532 F.2d 809, 819 (2d Cir. 1976); *Benitez Rexach v. United States,* 390 F.2d 631, 632 (1st Cir. 1968); *Kurz v. United States,* 156 F. Supp. 99, 106 (S.D.N.Y. 1957), affd. 254 F.2d 811 (2d Cir. 1958).

In *United States v. Matheson, supra,* Mrs. Burns, the decedent, and her attorney represented to the U.S. Government for a period of more than 20 years that Mrs. Burns continued to be a citizen of the United States. As a result, Mrs. Burns obtained several benefits from the Government. The U.S. Court of Appeals for the Second Circuit held that the decedent's estate was estopped to deny her U.S. citizenship.

In *Benitez Rexach v. United States, supra,* the taxpayer earlier had renounced his U.S. citizenship but thereafter succeeded in acquiring a U.S. passport by representing to the State Department that the renunciation had been involuntarily given. In a subsequent action by the Government for taxes owed, the U.S. Court of Appeals for the First Circuit held that the taxpayer was precluded by the record from claiming that he ever ceased to be, whether de jure or de facto, a U.S. citizen. *Benitez Rexach v. United States,* 390 F.2d at 632.

In *Kurz v. United States, supra,* the decedent had throughout his lifetime "performed acts of control" over a trust and "obtained the advantages of his reservation of power". The District Court held that the decedent's executors were estopped to challenge the inclusion of the principal of the trust in his taxable gross estate, concluding that "his representatives should not now be permitted to take an inconsistent stand to the detriment of the Government, which has appropriately imposed the tax in reliance upon the decedent's act". *Kurz v. United States,* 156 F. Supp. at 106.

In *Beltzer v. United States,* 495 F.2d 211 (8th Cir. 1974), the taxpayer was a coexecutor of his father's estate. The taxpayer inherited stock which had been reported in the estate tax return as having a fair market value of $59,713.41 on the

date of his father's death, September 22, 1959. The time for adjustments and assessments against the estate expired on December 23, 1963. On May 6, 1966, the taxpayer sold the shares for $140,000. For purposes of determining his gain on the sale of the stock, the taxpayer asserted that the stock actually had a fair market value of $118,019.64 on the date of his father's death, despite the fact that he had signed the estate tax return at the lesser figure and had received the benefit of the lower estate tax. The U.S. Court of Appeals for the Eighth Circuit held that the taxpayer was bound by the lower stock value under the duty of consistency. The Court of Appeals explained that a taxpayer is placed under a duty of consistency when:

(1) the taxpayer has made a representation or reported an item for tax purposes in one year,
(2) the Commissioner has acquiesced in or relied on that fact for that year, and
(3) the taxpayer desires to change the representation, previously made, in a later year after the statute of limitations on assessments bars adjustments for the initial year.

* * * A taxpayer in this situation, innocent or otherwise, who has already had the advantage of a past alleged misstatement—such advantage now beyond recoupment—may not change his posture and, by claiming he should have properly paid more tax before, avoid the present levy. * * *
[Beltzer v. United States, supra at 212. Citations omitted.]

In the present case, petitioner and the other qualified heirs represented and reported on the estate tax return and the attachments thereto that parcels 1 through 5 were qualified real property and that they were qualified heirs. Petitioner and Mrs. LeFever consented to the election to value the property under section 2032A, agreed and consented to the application of section 2032A(c), agreed and consented to be personally liable for the additional estate tax imposed by section 2032A(c) in the event of early disposition or cessation of the qualified use of the farmland, and acknowledged that these agreements were a condition precedent to the election to specially value the farmland under section 2032A. Respondent acquiesced and relied upon petitioners' representations that the farmland was qualified real property[18] and

---

[18] Petitioners suggest that this is a legal conclusion and not a statement of fact. However, whether the land was being farmed, by whom, and under what sharecropping or other arrange-

accepted the estate tax return as filed. Having received the benefit of the substantially lower estate tax, petitioner and Mrs. LeFever now, when the statute of limitations on assessments bars adjustments for the estate tax, seek to disavow the assertions made on the estate tax return and in their agreements in an attempt to avoid the present application of the additional estate tax under section 2032A(c).

In the instant case, the application of quasi-estoppel or the duty of consistency is even more compelling than in *Beltzer v. United States, supra,* and the other cases discussed above, because the statute requires the executor to file the section 2032A(d)(2) agreements as a condition precedent to electing the special use valuation. Sec. 2032A(a)(1). Section 2032A(d)(2) requires each person who has an interest *in any property designated in the agreement* to sign the agreement consenting to the application of section 2032A(c) *to such property.* Obtaining the benefits of the special use valuation is conditioned upon the filing of the section 2032A(d)(2) agreements. In their consent to the election, petitioners identified the property at issue in this case and represented that the property was qualified real property. They agreed to the application of section 2032A(c) to such property and agreed to be personally liable for the additional estate tax in the event of the disposition or cessation of qualified use with respect to such property. Once the election is made, it is irrevocable. Sec. 2032A(d)(1). We hold that, under the doctrine of the duty of consistency, petitioners are estopped to deny that the property was qualified real property or to assert that the election was invalid.

To allow petitioners to disavow their prior representations, under such circumstances, would invite similar intentional deceit on the part of other taxpayers seeking to gain a tax benefit. See *Estate of Durkin v. Commissioner,* 99 T.C. 561, 574–575 (1992); see also *Burnet v. Commonwealth Improv. Co.,* 287 U.S. 415 (1932); *Commissioner v. Danielson,* 378 F.2d 771 (3d Cir. 1967), vacating and remanding for a different reason 44 T.C. 549 (1965); *Dodd v. Commissioner,* 298 F.2d 570 (4th Cir. 1962), affg. T.C. Memo. 1961–8; *Commissioner v. State-Adams Corp.,* 283 F.2d 395 (2d Cir. 1960), revg. 32 T.C. 365 (1959); *Ullman v. Commissioner,* 264 F.2d

---

ments are factual matters within the peculiar knowledge of petitioners.

305 (2d Cir. 1959), affg. 29 T.C. 129 (1957); *Schmitz v. Commissioner,* 51 T.C. 306 (1968), affd. sub nom. *Throndson v. Commissioner,* 457 F.2d 1022 (9th Cir. 1972).

*Cessation of Use*

Petitioners had until July 24, 1985, 2 years after the date of death of decedent, to begin their qualified use of the property. Sec. 2032A(c)(7)(A). Cash lease of the property, except by a surviving spouse to a family member, is not a qualified use of the property. A qualified heir other than the surviving spouse of the decedent, thus, cannot satisfy the requirement that he or she continue the qualified use by cash renting the property to a family member. *Williamson v. Commissioner,* 93 T.C. 242 (1989). Neither petitioner nor Mrs. LeFever is decedent's surviving spouse. Therefore, petitioners' cash lease of the property constitutes a cessation of qualified use. *Stovall v. Commissioner,* 101 T.C. 140 (1993); *Williamson v. Commissioner, supra; Martin v. Commissioner,* 84 T.C. 620 (1985).[19] We hold that petitioners failed to commence using the property for its qualified use within the 2-year grace period and ceased to use the property for its qualified use as of July 24, 1985, 2 years after the date of decedent's death.

*Statute of Limitations*

If qualified real property is disposed of or ceases to be used for a qualified use, the period of limitations for the assessment of any additional estate tax under section 2032A(c) does not expire before the expiration of 3 years from the date the Secretary is notified of the disposition or cessation. Sec. 2032A(f). The estate tax return and the attachments thereto did not constitute notification of cessation of use for the same reasons that such documents did not show that the property was not qualified real property.

Petitioners' reply to the IRS questionnaire in 1990 gave notice to the IRS that the property was being cash rented and, therefore, was notification to the IRS of the cessation of the qualified use. *Stovall v. Commissioner,* 101 T.C. at 150–155. Therefore, the 3-year period of limitations of section 2032A(f) commenced on August 13, 1990. Respondent issued

---

[19] See also *Fisher v. Commissioner,* T.C. Memo. 1993–139.

the notices of deficiency to petitioners on July 22, 1992, which is within the period of limitations.

*Amount of the Deficiency*

Decedent devised parcels 2, 3, and 4 to Mrs. LeFever and parcel 5 to petitioner. Respondent issued separate notices of deficiency to petitioners, computed on the basis of cessation of use of the entire parcel or parcels each had inherited from decedent. Petitioner cash rented all 120 acres of parcel 5, and, therefore, the computation set forth in the notice of deficiency to petitioner is correct.

In her opening brief, respondent conceded that the additional estate tax does not apply to those portions of Mrs. LeFever's farmland that are rented on a sharecrop basis, and applies only to those acres that are cash rented. See *supra* note 1; sec. 2032A(c)(2)(D). Respondent on brief recomputed Mrs. LeFever's deficiency for the cash-rented acres, using the fair market values reported on the estate tax return.

Mrs. LeFever objects to respondent's use of these values, claiming that such values do not reflect that only portions of the parcels were subject to the additional estate tax and that such cash-rented portions had a lesser value than the average value for all the land within a parcel. There is no evidence in the record as to any lesser value for the cash-rented portions of her parcels.[20] The correct amount of the reduced deficiency for Mrs. LeFever will be determined under Rule 155.

We hold that petitioner is liable for a deficiency in additional estate tax in the amount of $38,154.33 and that Mrs. LeFever is liable for a deficiency in additional estate tax in a reduced amount to be determined under Rule 155.

---

[20] We hold that Mrs. LeFever is estopped to deny the total fair market value of each parcel of her land as reported on the estate tax return. *Beltzer v. United States,* 495 F.2d 211 (8th Cir. 1974). We do not address in this opinion, however, the proper computation under sec. 2032A(c)(2)(D) of a cessation of qualified use as to only a portion of the specially valued farmland. If the parties cannot resolve this matter in their computations under Rule 155, we may have to revisit the subject.

To reflect the foregoing,

> *Decision will be entered for respondent as to the deficiency in the amount of $38,154.33 with respect to petitioner William LeFever and in a reduced amount to be determined under Rule 155 with respect to petitioner Betty Lou LeFever and for petitioners as to the additions to tax pursuant to section 6651(a).*