WILLIAM LEFEVER, QUALIFIED HEIR-TRANSFEREE OF THE ASSETS OF THE ESTATE OF BLANCHE KNOLLENBERG, AND BETTY LOU LEFEVER, QUALIFIED HEIR-TRANSFEREE OF THE ASSETS OF THE ESTATE OF BLANCHE KNOLLENBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
LeFever v. Commissioner
Docket No. 19915-92
United States Tax Court
T.C. Memo 1995-321; 1995 Tax Ct. Memo LEXIS 322; 70 T.C.M. (CCH) 98; July 19, 1995, Filed *322 Decision identical to the January 26, 1995, decision will again be entered. For petitioners: Patrick J. Regan and Juandell D. Glass. For respondent: Elizabeth Downs PARKER
PARKER
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION *
PARKER, Judge: The instant matter arises out of a dispute between the parties over their differing computations under Rule 155. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. On January 26, 1995, the Court entered a decision in this case based upon its opinion in LeFever v. Commissioner, 103 T.C. 525 (1994), and respondent's computation for entry of decision, filed December 23, 1994. On February 6, 1995, petitioners filed a motion to vacate the decision on the ground that they had not received the Court's notice of filing *323 of respondent's computation under Rule 155. [1] Petitioners' motion was granted, the decision was vacated, and petitioners were allowed to file their alternative computation and objections to respondent's computation. Respondent has replied to those objections. The parties have discussed the issues in their various submissions, but have not requested oral argument or an evidentiary hearing. The issues presented by the parties are as follows: (1) Whether the estate of Blanche Knollenberg (the estate) is entitled to an additional administration expenses deduction for the litigation expenses incurred by petitioners in this case in contesting their section 2032A(c) recapture tax liability; and (2) whether, for purposes of the computation of that section 2032A(c) recapture tax liability, the per acre fair market value of the 110-acre, cash-rented pastureland portion of a *324 160-acre property designated parcel 2 in this case should be based (1) on the average per acre fair market value as determined by the estate's appraiser for the entire 160-acre parcel, or (2) on the average annual gross cash rental per acre of comparable pasture used by the estate's appraiser in determining the section 2032A special-use value of the parcel. FINDINGS OF FACT Petitioners resided in Augusta, Kansas, when they filed their petition in this Court. Petitioners are husband and wife. Mrs. LeFever's mother, Blanche Knollenberg (decedent), died on July 24, 1983. Decedent devised four parcels of farmland (parcels 2, 3, 4, and 6) to Mrs. LeFever and one parcel (parcel 5) to Mr. LeFever. Mr. LeFever, as executor of the estate, filed the estate tax return and elected the special use valuation provided for in section 2032A for his parcel and for three of Mrs. LeFever's four parcels. [2] The estate tax return was accepted by the Internal Revenue Service as filed, and the special use valuation election was allowed without audit. The period of limitations has now run on the estate. *325 Petitioners did not farm these four specially valued parcels themselves, but leased them to nonfamily members, some acreage being rented under a sharecropping arrangement, a qualified use of the land, and some rented for cash, a nonqualified use of the land. Mr. LeFever's parcel was entirely cash rented. Respondent learned of this cash-rental use on August 13, 1990, through Mr. LeFever's response to respondent's special use compliance questionnaire. Respondent determined the section 2032A(c)recapture tax and issued notices of deficiency to petitioners, individually, as qualified heirs of decedent. These deficiencies were based on cessation of qualified use of each parcel. Petitioners filed a petition for a redetermination of tax in this Court. Throughout the proceedings, petitioners have attempted to recharacterize their recapture tax liability as the liability of the estate for additional estate tax, ignoring section 2032A. [3]Section 2032A(c)(1) imposes a recapture tax on beneficiaries who do not continue the qualified use of the property for the required statutory period after the decent's death. Petitioners, however, argued that the estate's special use election was invalid *326 and that the statute of limitations, both for the estate tax and transferee liability, barred assessment and collection of the tax. We held petitioners were estopped from asserting that the election was invalid, since they agreed to be personally liable for any recapture tax and enjoyed the benefits of that special use election. Petitioners have presented no information as to how the present litigation benefits the estate or relates to the administration of the estate. We held that, as of July 24, 1985, petitioners ceased to use the property for the qualified use (actually, failed to commence a qualified use within 2 years after decedent's death), and petitioners are thus liable for the recapture tax under section 2032A(c)(1). Respondent conceded that Mrs. LeFever was liable for the recapture tax only with respect to the land that was cash rented. Due to respondent's concession, the decision as to Mrs. LeFever's deficiency *327 was to be entered under Rule 155. [4] The parties disagree as to the proper computation. In this Rule 155 proceeding, the only property at issue consists of 110 acres of pastureland within the 160-acre parcel designated as parcel 2. The dispute is its proper valuation. The only evidence as to value is an appraisal report that was attached to the estate tax return; that appraiser did not testify at the trial. Based on comparable sales, the estate's appraiser found that parcel 2 had a fair market value of $ 149,000 for its highest and best use as a subdivision development. The appraiser made no distinctions as to the values of specific acres within this parcel, nor have petitioners submitted any evidence regarding any such differences in value. The estate's appraiser also valued parcel 2 for special use valuation using a capitalization of income method. His *328 appraisal report described parcel 2 as consisting of 42.7 acres used for cultivation and 117.3 acres used for pasture. The estate's appraiser assigned the cultivated acres a special use value of $ 271.7597 per acre, and the pasture acres a special use value of $ 112.5322 per acre. [5] Thus, according to the estate's appraiser, the total special use valuation of parcel 2 was $ 24,804.16; the total fair market value of parcel 2, based on its highest and best use (subdivision development), was $ 149,000.
OPINION
Litigation Expenses
Section 2053 allows for a deduction from the value of the gross estate for administration expenses. Sec. 2053(a)(2). Administration expenses include executor's *329 commissions, attorney's fees, and miscellaneous expenses. Sec. 20.2053-3(a), Estate Tax Regs. The amounts deductible as administration expenses are limited to those actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. Sec. 20.2053-3(a), Estate Tax Regs. Administration expenses which are deductible will normally be limited to those which could be anticipated as being necessarily incurred and paid during the period of administration. Estate of Smith v. Commissioner, 57 T.C. 650,661-662 (1972), affd. 510 F.2d 479 (2d Cir. 975). Expenses not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. Sec. 20.2053-3(a), Estate Tax Regs. Attorney's fees incurred by beneficiaries incident to litigation are not deductible unless the litigation is essential to the proper settlement of the estate. Estate Of Reilly v. Commissioner, 76 T.C. 369, 373 (1981); sec. 20.2053-3(c)(3), *330 Estate Tax Regs. Here there is no showing that the present litigation is essential to the proper settlement of the estate. Petitioners, as qualified heirs, are personally liable for the recapture tax under section 2032A(c). Sec. 2032A(c)(5). Petitioners throughout this litigation have failed to distinguish between the estate tax imposed upon a decedent's estate under section 2001 and the additional estate tax (recapture tax) imposed upon qualified heirs under section 2032A(c). These are separate and distinct taxes, subject to separate provisions of the Internal Revenue Code and imposed on different taxpayers. Although petitioners have tried to present this case as contesting the estate's tax liability, the litigation involved petitioners' personal liability for the recapture tax and was for petitioners' individual benefit, not for the benefit of the estate. Petitioner's suit was not necessary to the collection of assets, payment of debts, or distribution of property of the estate. Therefore, we hold that the estate is not entitled to an additional administration expenses deduction for the costs of petitioner's litigation in this case. Valuation of Pastureland
The amount of *331 the recapture tax imposed by section 2032A(c)is generally the lesser of (1) the "adjusted tax difference attributable to such interest" or (2) the excess of (a) the amount realized upon disposition of the interest in an arm's-length transaction over the special valuation of that interest or (b) in any other case, including cessation of use, the fair market value of the interest over the special valuation of the interest. Sec. 2032A(c)(2). [6]
*332 We need not discuss the various statutory definitions in and calculations under section 2032A(c)(2). The parties appear to agree on methodology. [7] They disagree as to only one figure -- the value, without the section 2032A election, of the 110 acres of pastureland in parcel 2. In respondent's computation, the fair market value of the 110 acres was calculated by using a pro rata share of the fair market value of parcel 2 as reported in the estate tax return (110 / 160 X $ 149,000 = $ 102,437.50). In other words, respondent used the average per acre fair market value figure that the estate's appraiser used ($ 149,000 total fair market value / 160 acres = $ 931.25 per acre; $ 931.25 per acre x 110 acres =$ 102,437.50). Petitioner does not argue and has not produced any evidence that the fair market value on the date of cessation of use (July 24, 1985) was less than the fair market *333 value on the date of decedent's death (July 24, 1983). Indeed, both parties use a date-of-death value. However, petitioners argue that pasture acreage is worth less per acre than cultivated land, and that, therefore, the use of the average per acre value of the appraiser's fair market value of parcel 2 is inappropriate. Specifically, petitioners argue that the "ratios" of the fair market value of pasture and cultivated land would be "substantially the same, if not identical, to the special use value ratios of the pasture and cultivated land." There is no factual foundation in the record for that argument, and the Court is unwilling to make such an assumption. What petitioners propose is for the Court to use what they describe as the "ratios" of the estate's special use value for cultivated land ($ 271.7597 per acre) and for pasture ($ 112.5322 per acre) for parcel 2 which petitioners calculate as 29.283 percent: $ 271.7597 + $ 112.5322 = $ 384.2919; $ 112.5322 / $ 384.2919 = .29283). Petitioners would then apply 29.283 percent thus derived to the estate appraiser's total fair market value of $ 149,000 for parcel 2 to arrive at a fair market value of $ 43,631.67 for the 110 acres *334 of pastureland ($ 149,000 x .29283 = $ 43,631.67). While this is an interesting arithmetical exercise by petitioners, the Court questions the "ratios" since the relative acreage of the two types of land is not taken into account. More importantly, petitioners are mixing apples and oranges. The special use values per acre are based on capitalization of income for land used for farming purposes, whereas the $ 149,000 fair market value of parcel 2 as a whole is based on comparable sales for land whose highest and best use is for subdivision purposes. Petitioners assume that since pastureland is less valuable than cultivated land for farming purposes, it must also be less valuable for subdivision development purposes. There is simply no evidence in the record to support that assumption. Fair market value of property reflects the highest and best use of the property on the relevant valuation date. Stanley Works & Subs. v. Commissioner, 87 T.C. 389, 400 (1986). The determination of fair market value is a question of fact. McGuire v. Commissioner, 44 T.C. 801, 812 (1965). The special use valuation is not based on the highest *335 and best use, but on the use of the land for farming purposes. For farming purposes, cultivated land no doubt is usually more valuable than pastureland. However, the highest and best use of parcel 2 was for a subdivision development, and there is no evidence that for that purpose the cultivated land is more valuable than pastureland. Also as to the other items that petitioners call "negative factors" in regard to parcel 2 -- the absence of a water well and access roads and the presence of pipeline easements -- again there is no evidence as to how these would impact on the land for subdivision purposes. [8] More importantly, the estate's appraiser discussed these negative factors in his report and presumably took these factors into account in arriving at the fair market value of $ 149,000 for parcel 2. *336 We accept the estate appraiser's value of $ 149,000 as the fair market value of parcel 2. As we found in LeFever v. Commissioner, 103 T.C. at 528, "The comparable sales used by the appraiser did not identify or distinguish the composition of the land, in terms of cultivation or pastureland." As the Court pointed out in its earlier opinion, there is no evidence in the record as to a lesser per acre fair market value for the cash-rented acres at issue than the average per acre value of the entire parcel. Id. at 546 and n.20. There is still no such evidence in the record.[9] We hold, therefore, that the fair market value of the 110 acres of parcel 2 is to be based on the average per acre fair market value as determined by the estate's appraiser, for a total value of $ 102,437.50. *337 Decision identical to the January 26, 1995. decision will again be entered.
Footnotes
*. LeFever v. Commissioner, 103 T.C. 525↩ (1994).
1. The Court served such notice on December 23, 1994, and allowed petitioners to and including January 13, 1995, to file an alternative computation.↩
2. Parcel 6, the remainging parcel, did not qualify for the election.↩
3. See LeFever v. Commissioner, 103 T.C. 525, 538-539↩ n.16 (1994).
4. Mr. LeFever's parcel was entirely cash rented, and thus decision was entered for respondent as to his deficiency. There is no dispute as to the amount thereof.↩
5. Specifically, these special use values per acre represented the net cash rental per acre (gross cash rental per acre less per acre real estate tax) divided by 11.65 percent (the average annual effective interest rate for all new Federal land bank loans). See LeFever v. Commissioner, 103 T.C. at 528↩.
6. Sec. 2032A(c) provides: (2) Amount of additional tax. -- (A) In general. -- The amount of the additional tax imposed by paragraph (1) with respect to any interest shall be the amount equal to the lesser of -- (i) the adjusted tax difference attributable to such interest, or (ii) the excess of the amount realized with respect to the interest (or, in any case other than a sale or exchange at arm's length, the fair market value of the interest) over the value of the interest determined under subsection (a). (B) Adjusted tax difference attributable to interest. -- For purposes of subparagraph (A), the adjusted tax difference attributable to an interest is the amount which bears the same ratio to the adjusted tax difference with respect to the estate determined under subparagraph (C)) as -- (i) the excess of the value of such interest for purposes of this chapter (determined without regard to subsection (a)) over the value of such interest determined under subsection (a), bears to (ii) a similar excess determined for all qualified real property. (C) Adjusted tax difference with respect to the estate. -- For purposes of subparagraph (B), the term "adjusted tax difference with respect to the estate" means the excess of what would have been the estate tax liability but for subsection (a) over the estate tax liability. For purposes of this subparagraph, the term"estate tax liability" means the tax imposed by section 2001 reduced by the credits allowable against such tax. (D) Partial dispositions. -- For purposes of this paragraph, where the qualified heir disposes of a portion of the interest acquired by (or passing to) such heir (or a predecessor qualified heir) or there is a cessation of use of such a portion -- (i) the value determined under subsection (a) taken into account under subparagraph (A)(ii) with respect to such portion shall be its pro rata share of such value of such interest, and (ii) the adjusted tax difference attributable to the interest taken into account with respect to the transaction involving the second or any succeeding portion shall be reduced by the amount of the tax imposed by this subsection with respect to all prior transactions involving portions of such interest.↩
7. The parties' calculations appear to follow Form 706-A, United States Additional Estate Tax Return, and the Instructions for Form 706-A.↩
8. Petitioners complain that the Court did not allow them to develop these factors at the trial because the fair market values were not relevant to the issues then before the Court. We agree with petitioners that the fair market value of 110 acres of parcel 2 is now relevant in this Rule 155↩ proceeding. While the Court's order of April 12, 1995, asked the parties whether an evidentiary hearing was required and invited them to suggest dates and places for the same, neither party requested an evidentiary hearing.
9. In their joint status report, filed May 26, 1995, the parties requested that the Court make its determination on the basis of the record, and they specifically stated that they did not request an oral hearing or evidentiary hearing on this matter.↩